**In Re Estate of Louis KRANITZ, Deceased.**

**Theodore M. KRANITZ, Respondent–Cross Appellant,**

v.

**J. Ruth HOYT, Appellant–Cross Respondent.**

**No. WD 31181.**

Missouri Court of Appeals, Western District.

Nov. 3, 1980.

Motion for Rehearing and/or Transfer to Supreme Court Denied Dec. 30, 1980.

Application to Transfer Denied Jan. 9, 1981.

William E. Erdrich, St. Joseph, for appellant–cross respondent.

Theodore M. Kranitz, St. Joseph, for respondent–cross appellant.

Before PRITCHARD, P. J., SWOFFORD, J., and FLANIGAN, Special Judge.

FLANIGAN, Special Judge.

This action, which originated in the probate division of the circuit court of Buchanan County, involves a claim by J. Ruth Hoyt ("Joan") against the estate of Louis Kranitz, deceased, ("Louis"). Theodore M. Kranitz, the executor of the estate, filed a counterclaim. Sitting without a jury, the trial court allowed some items of the claim and the counterclaim and denied other items. Both Joan and the executor have appealed.

On her appeal Joan presents two points: (1) The trial court erred in denying her claim to a share[1] of the proceeds of the sale of Arizona real estate; and (2) The trial court erred in admitting certain evidence in support of a $1,300 item in the executor's counterclaim based on a loan in that amount made by Louis to Joan.

On his appeal the executor presents three points: (1) The trial court erred in allowing any item of Joan's claim, including recovery on a $1,700 note made by Louis to Joan, because all claims of Joan were barred by reason of a contract which Louis and Joan entered into in 1974; (2) The trial court erred in awarding a microwave oven and a music box to Joan because those items were assets of the estate; and (3) The trial court erred in denying the item of the executor's counterclaim which sought reimbursement from Joan for bills of Joan which Louis paid during his lifetime.

Because Joan's first point and the executor's first point are interlocked, they will be considered together.

Louis, a lawyer, died in 1979. For several years prior to his death he had a close social relationship with Joan. It was Joan's testimony that she was "living with Louis." The brief of the executor states that Louis "entered into some form of symbiotic relationship with Joan which continued until he died." The record shows that Joan and Louis cohabited for several years but never married.

In July 1974 Joan and Louis went to a convention in Chicago. Louis's son, who is a lawyer and is executor of Louis's estate, drafted an agreement, set out marginally,[2]

---

1. Although Joan's claim demanded all of the proceeds, at the trial her position was that she was entitled to one–half.

   "Where tenants in common join in a sale of the property owned in common and all the money is received by one, the other may maintain an action for money had and received for his moiety against the other." 86 C.J.S. Tenancy in Common § 84, p. 489. See also cases cited in the opinion dealing with the Missouri rule of division of proceeds based on proportionate contributions.

2. THIS AGREEMENT, made between [Louis] and [Joan], both of the City of St. Joseph, *Missouri.*

   WITNESSETH:

   The parties have entered into and upon a social relationship which is expected to confer benefits upon both parties, *regardless of* whether or not the same shall result in marriage; and they desire to fix and determine by this agreement the rights and claims that will accrue to each of them in the estate and property of the other by reason of said relationship and any future relationship that may follow hereafter.

   NOW, THEREFORE, in consideration of the premises and of the mutually beneficial relationship, and in further consideration of the mutual promises and undertakings hereinafter set forth, the parties agree:

   1. [This paragraph is the same as paragraph 2 with the parties reversed.]

   2. [Joan] shall receive from the estate of [Louis] the sum of $1.00 and no more, in full and final settlement of all claims, demands, actions and causes of action whatsoever, whether the same arise by reason of contract, quasi–contract, legal or moral obligation, curtesy, dower, marital rights, testamentary device (sic) or intestate descent; and [Joan] further hereby waives any claim to or right to share in any portion of the estate of [Louis] other than as hereinabove provided, whether such claim may arise out of any provision of law of the State of Missouri or any other state or the United States, or by contract, or otherwise.

mailed it to Joan and Louis, and both of them signed it.

On January 13, 1976, Joan and Louis obtained title, as tenants in common, to some real estate in Arizona. The deed, in which they were co-grantees, described Louis as "an unmarried man" and Joan as "an unmarried woman." The deed was silent as to the respective interests of Joan and Louis. The deed also recited that "the grantee (sic) herein agrees to assume and pay" a certain mortgage. Also on January 13, 1976, Louis, alone, executed a promissory note in the amount of $6,855 payable to the sellers of the Arizona land and secured the note by a second mortgage which Louis alone executed. Joan's evidence showed that she was the source of some of the mortgage payments.

In the summer of 1977 Joan and Louis sold the real estate and the proceeds of that sale, after payment of encumbrances (including $1,688.84 on the second mortgage) and other expenses, amounted to $15,016.10. A check in that amount, payable to Louis and Joan, was sent by the handler of the transaction to St. Joseph, Missouri, where Louis and Joan then jointly resided. A copy of the front of that check, which was cashed, was introduced in evidence but a copy of the back of it was not introduced.

As the brief of the executor points out, the record is silent with respect to the following: the original purchase price of the Arizona real estate; the respective amounts contributed by Joan and Louis to its acquisition; the amount of the respective contributions of Joan and Louis to improvements, maintenance costs, taxes, and mortgage payments; the value of any services rendered by Joan or Louis with respect to the real estate.

The record leaves much to be desired with respect to tracing the proceeds of the

$15,016.10 check. At the trial the executor stated that the 1977 income tax return of Louis was "prepared in our office and taxes were paid on the transaction. That was recorded on his 1977 tax return. He did pay taxes on the entire gain on that transaction. But, what happened to the money, we have never been able to find." There was no claim by the executor that Joan made a gift[3] to Louis of her share of the proceeds. There was evidence that Joan did not receive any of the proceeds.

In Thompson on Real Property, 1979 Replacement, Vol. 4, § 1797, p. 150, it is said:

"Tenants in common are presumed to take equal shares unless the instrument creating the tenancy specifies otherwise. Tenants in common are considered to own equal shares unless there is contrary evidence. If the deed to two persons is silent as to their respective interests, there is a presumption that the interests are equal. . . ." To similar effect see 20 Am.Jur.2d Cotenancy and Joint Ownership § 118, p. 215; Anno. 156 A.L.R. 515.

In *Brooks v. Kunz*, 597 S.W.2d 183 (Mo. App.1980), in commenting on the foregoing presumption, the court said at p. 187: "Although supported by logic and fairness this presumption has not been recognized in Missouri cases, which require evidence of the proportionate contribution of each of the grantees toward the acquisition of the property."

In addition to *Brooks*, the following cases dealt with the respective rights of a man and a woman, who cohabit while unmarried, to real estate to which they acquire title as tenants in common: *Anderson v. Stacker*, 317 S.W.2d 417 (Mo.1958); *Atkinson v. Dasher*, 588 S.W.2d 215 (Mo.App.1979); and *Keller v. Porchey*, 560 S.W.2d 257 (Mo.App. 1977). In each case separation of the re-

---

3. Each party shall during his or her lifetime keep and retain sole ownership, control, and enjoyment of all property, real, personal, and mixed, including but not limited to choses in action, now owned or hereafter acquired by him or her, free and clear of any claim of the other.

4. . . .
Dated July 6, 1974.

**3.** In view of the executor's statement that Louis paid taxes on the entire gain on the Arizona transaction, it may be doubtful that Joan's share was the subject of a gift to Louis because ordinarily such a gift is not subject to federal income tax. See 26 U.S.C. § 102.

spective interests was sought, either by partition or by an action to quiet title.

In *Anderson* the man furnished all of the funds used to acquire the real estate. The woman did not furnish any of the funds nor did she perform any services "such as a woman living with a man ordinarily renders." The supreme court affirmed the action of the trial court which awarded all the land, in a quiet title action, to the man.

In *Atkinson* the man contributed $19,000 and the woman contributed $1,000 to a down payment of $20,000. Although both signed a note for the balance of the purchase price, all payments on the note were made by the man. The court affirmed the judgment of the trial court which awarded the woman, out of the proceeds of a partition sale, only the $1,000 contributed by her and awarded the balance to the man.

In *Brooks* and *Keller* the record did not show the respective financial contributions of the man and the woman to the acquisition of the land. In each instance the court of appeals refrained from making a determination of their respective interests and remanded the case to the trial court for that determination. In *Brooks* the Missouri rule, basing division of the proceeds upon the proportionate contributions of the cotenants, was held applicable to the division of proceeds of the sale of Missouri land and of land located in Montana.[4]

■ As pointed out in *Capoferri v. Day*, 523 S.W.2d 547, 557[2, 3] (Mo.App. 1975), it is the duty of this court to dispose finally of the case unless justice otherwise requires. See Rule 84.14.[5] But the duty to make final disposition "presupposes a record and evidence upon which we can perform this function with some degree of confidence in the reasonableness, fairness and accuracy of our conclusion; and, when such record and evidence are not presented, reversal and remand necessarily follow." *Capoferri*, at p. 558.

Because the record has not been developed satisfactorily with respect to the facts governing entitlement to the proceeds of the Arizona real estate, the cause must be remanded for that purpose, as was done in *Brooks* and *Keller*, unless there is validity in the executor's first point that the 1974 agreement bars Joan from making a claim to a share of the proceeds.

In the agreement the parties recited that their purpose was "to fix and determine by this agreement the rights and claims that will accrue to each of them in the estate and property *of the other* by reason of said relationship. . . ." Although the language of paragraph 2 of the agreement is broad, the language of paragraph 3 is to the effect that [Joan] "shall during her lifetime keep and retain sole ownership, control, and enjoyment of all property, real, personal, and mixed, including but not limited to choses in action, now owned or hereafter acquired by [Joan] free and clear of any claim of [Louis]."

If the fact is that Louis converted Joan's share of the Arizona proceeds, the agreement, viewed by its four corners, is no bar to Joan's recovery of that share. Indeed if the agreement were construed to protect a wrongful conversion, its legality would be, to say the least, open to question.

This court agrees with the trial court that paragraph 3 of the agreement specifically permitted Joan to recover on the $1,700 note executed in her favor by Louis in 1975.

The executor's first point has no merit. The cause will be remanded for further proceedings to determine the respective rights of the parties to the Arizona proceeds.

Joan's second point challenges the admissibility of evidence concerning an item of the executor's counterclaim, a $1,300 claim based on a loan in that amount made by Louis to Joan. Specifically, Joan attacks

4. In the instant case neither side has claimed that the issue of entitlement to the proceeds of the Arizona land is governed by the law of Arizona and this court expresses no opinion thereon. On remand each side is free to explore the soundness and significance of such a claim.

5. All references to rules are to V.A.M.R.

the admissibility of estate's Exhibits 11 and 14A. Exhibit 11 was a check in the amount of $1,300 written in 1978 by Louis on his account in favor of Joan. Exhibit 14A was Louis's "check register" which contained an entry with regard to the check which described it as a loan. For two independent reasons Joan's second point has not been preserved for appellate review.

■ In her brief as appellant, Joan's statement of facts reads: "Appellant adopts her statement of facts as set out in her cross-respondent's brief." The statement of facts portion of the latter brief contains no reference to Exhibit 11 or to Exhibit 14A or to portions of the transcript dealing with either of them. Accordingly Joan has failed to comply with that portion of Rule 84.04(c) which requires that the statement of facts be "a fair and concise statement of the facts relevant to the questions presented for determination." Moreover, both Exhibit 11 and Exhibit 14A were offered and received into evidence without objection. Exhibit 14 was a Xerox copy of Exhibit 14A. When Exhibit 14 was offered into evidence Joan's counsel did pose one objection but it is not the same objection which Joan now makes to Exhibit 14A. Joan's instant objections, made initially in this court, have not been preserved because they were not presented to the trial court. *State v. Northeast Building Company*, 421 S.W.2d 297, 301[4] (Mo.1967). Joan's second point has no merit.

■ The executor's second point challenges the ruling of the trial court which awarded a microwave oven and a music box to Joan. The statement of facts portion of the executor's brief makes no mention of the microwave oven or the music box and thereby violates Rule 84.04(c). There was conflicting evidence concerning ownership of these items. There is substantial evidence to support the ruling of the trial court and this court refrains from disturbing that ruling. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). The executor's second point has no merit.

■ The executor's third point is that the trial court erred in denying the item of the executor's counterclaim which sought reimbursement for bills which Louis paid during his lifetime. The flaw in this contention is that there is no evidence the bills involved were those incurred by Joan. It is true that some of the bills were for products normally used by women but it does not follow that they were bought by Joan rather than by Louis and given by him to her. Indeed, with respect to some of the products, there is no evidence that it was Joan who received them. The 1974 agreement does not contain any provision prohibiting inter vivos gifts between the parties. The executor's third point has no merit.

The executor has filed a motion to strike Joan's brief on the ground that it "is not prepared in accordance with the rules." This court has determined that the brief is not so defective that it should be stricken. The motion is denied. The executor has also filed a motion for an award of damages, pursuant to Rule 84.19, on the ground that Joan's appeal is frivolous. That motion is denied.

That portion of the trial court's judgment which denied Joan any share in the proceeds of the sale of the Arizona real estate is reversed and the cause remanded for further proceedings consistent with this opinion. In all other respects the judgment is affirmed. It is so ordered.