Gary TAYLOR, Appellant,

v.

Joan M. TAYLOR, Conservator of the
Estate of Stephanie Marie
Taylor, Respondent.

No. WD 58795.

Missouri Court of Appeals,
Western District.

June 5, 2001.

Scott Manuel, Independence, for Appellant.

David A. Linehan, Kansas City, for Respondent.

RONALD R. HOLLIGER, Judge.

Gary Taylor appeals the judgment of the Clay County Probate Court holding that, because his parental rights had been terminated, he lacked standing to make objections to the final settlement filed in a conservatorship estate for his natural child Stephanie Marie Taylor, who died intestate on January 25, 2000. The Conservator of the estate, Gary Taylor's ex-wife and Stephanie's mother, contends that Gary Taylor improperly, untimely and without basis attempted to collaterally attack a dissolution modification judgment that had earlier purported to terminate Gary Tay-

lor's parental rights. Gary Taylor claims that the termination judgment is void and therefore subject to collateral attack in the conservatorship estate. The Conservator, Joan Taylor, also claims that Gary Taylor had, as part of a stipulation to terminate his parental rights, contractually waived his rights to inherit from Stephanie's estate. We hold that the court lacked jurisdiction in a modification of a dissolution proceeding to terminate parental rights.

## The Establishment Of The Conservatorship

Gary and Joan Taylor were the parents of two children, Stephanie, born on October 12, 1985, and Joseph, born on April 2, 1990. Stephanie was born with severe injuries resulting from alleged medical negligence. A substantial settlement was reached and on March 11, 1988, Gary and Joan were appointed as co-conservators to administer the funds in an estate established for Stephanie. For reasons neither reflected in the record nor likely germane, their marriage was dissolved by the Circuit Court of Clay County in 1992. Primary custody of the two children was awarded to Joan and Gary was ordered to pay $325 per month for the support of the two children. At some undefined time, but apparently near the time of dissolution, Joan became the sole conservator of Stephanie's estate.

## The Attempted Termination of Parental Rights

In a sworn affidavit Gary states that in January 1997 he was unable to work and was having severe financial difficulties. He was three months behind on his child support and was incarcerated in the Clay County jail for his delinquency. While in jail he met with Joan's attorney who presented him a document entitled "Stipulation for Modification of Decree of Dissolu-

tion of Marriage/Termination of Parental Rights." . The filings before the probate court indicate a difference of opinion between the parties as to what was said and what Gary understood from that meeting. In any event, Gary signed the stipulation on January 28, 1997. The stipulation and a "Motion to Modify Decree of Dissolution/Termination of Parental Rights" was filed in the Clay County Family Court on February 3, 1997.

The Motion to Modify filed by Joan alleged that there had been a substantial change of circumstances since the Decree of Dissolution. Specifically it was alleged: (1) that Gary had not supported his children and was $1200 in arrears; (2) that he did not provide adequate care for the children while in his temporary custody; (3) that the children suffered physically and emotionally while in Gary's care; (4) that Gary was constantly combative and argumentative with Joan and disrespectful to Joan in the presence of the children; (5) that Gary had not exercised consistent visitation with the children; (6) that Gary was an alcoholic, used alcohol to excess when the children were in his custody, and was intoxicated when transporting the children; and (7) that Gary had stated that he did not want visitation with the children and wanted to terminate his contact and his responsibility to the children. The Motion to Modify then alleged that termination of Gary's parental rights was in the best interests of the children.

The stipulation was filed with the motion. The stipulation in relevant part stated that the parties believed it to be in the best interests of the children that Gary's parental rights be terminated. It further provided that the parties agreed that Gary's rights be terminated effective December 1, 1996, "subject to the approval of the Circuit Court of Clay County." The

stipulation stated that termination of parental rights shall mean:

(a) The Respondent [Gary] shall have no further obligation to pay child support ... for the support of the minor children Stephanie Marie Taylor and Joseph Lee Taylor.

(b) The Respondent forfeits his rights to have temporary custody, visitation and contact with his two children Stephanie Marie Taylor and Joseph Lee Taylor.

(c) That the Respondent waive[s] any claim he may have now or in the future to inherit or receive monies from the estates of Stephanie Marie Taylor and Joseph Lee Taylor and specifically renounces any rights that he may have pursuant to § 474.010, RSMo.

A Commissioner[1] of the Clay County Family Court entered judgment pursuant to the motion and stipulation on April 11, 1997. The judgment would suggest that no evidence was heard. The judgment recited the contents of the motion and stipulation and ordered Gary's parental rights terminated and his child support canceled retroactive to December 1, 1996.

### Stephanie's Death and Gary's Collateral Attack of the Termination Judgment

Stephanie died on January 25, 2000, leaving a conservatorship estate of over one million dollars. A proceeding was subsequently initiated in the probate court to wind up the conservatorship, so that the conservatorship funds could then be transferred to the personal representative of Stephanie's decedent's estate which had been opened. Gary filed an objection to the proposed final settlement in the conservatorship proceeding alleging that he was the natural father of Stephanie. That objection raised three allegations: (1) that

1. The judgment was subsequently confirmed and signed by a circuit judge.

some of the conservatorship funds had been improperly invested, (2) that certain real property had not been listed in the proposed final settlement, and (3) that Joan had been living in real property belonging to the conservatorship estate and that she had not been paying rent to the conservatorship for the use of that property. Gary stated that his standing to raise his objections was as the natural father of the deceased protectee, entitled to a share of the protectee's intestate decedent's estate.

Joan replied to the objections by directing the trial court's attention to the stipulation and judgment of modification purporting to terminate Gary's parental rights. She contended that the termination judgment was a final unappealed judgment of the court and that Gary in the stipulation had waived any rights he might have in Stephanie's estate and specifically renounced his rights under § 474.010, RSMo. As a result she claimed that Gary was not an "interested person" as defined in § 472.010(15) of the Probate Code and had no legal standing or basis to object to the conservator's settlement. One day after this filing the court made a docket entry finding that Gary had no legal standing.

Gary responded by filing a motion on May 4, 2000, seeking leave to file amended objections, arguing that the judgment of modification was void, as the modification court failed to follow the statutory requirements of §§ 211.442 to 211.487, RSMo, before entering its judgment purporting to terminate his parental rights. Alternatively, Gary argued that the stipulation underlying the modification court's judgment was procured by fraud. Gary asked the probate court to vacate its prior order, find

that Gary's parental rights remained in force, and to hear his amended objections to the final settlement.[2] Joan further responded to Gary's motion which was subsequently denied by the court, apparently without hearing. On June 6, 2000, a docket entry noted that the trial court "takes up the motion of Gary Taylor to file first amended objections to final settlement ... [and] denies said motion in all respects." The trial court then entered its judgment on June 12, 2000, approving the proposed settlement filed by the conservator and ordering distribution of the estate assets to Joan as personal representative of the decedent's estate for Stephanie. Gary has appealed from that judgment.

## Points On Appeal

Gary first argues that the probate court erred by denying his objections to the final settlement, as the modification judgment upon which the probate court relied, which purported to terminate his parental rights, was void for the reason that none of the statutory requirements in Chapter 211 with regard to TPR proceedings had been followed. Gary points to the lack of any petition for termination filed by the Juvenile Officer and the modification court's failure to appoint a guardian *ad litem* for the child. He also suggests that the stipulation signed by him did not meet the statutory requirements for a consent to termination of parental rights under § 211.444, RSMo. Finally, he argues that these deviations from the statutory requirements within Chapter 211 deprived the modification court of jurisdiction to enter any judgment regarding the termination of his parental rights.

2. Subsequent to the probate court's first order and Gary's motion the conservator filed an amended final settlement.

Joan, in turn, argues that the failure to follow the requirements under Chapter 211 merely rendered the termination judgment irregular. In the event that the termination judgment is found to be void, she further argues that Gary failed to raise this invalidity within a reasonable time, as required by Rule 74.06. As a last fall-back position, she argues that even if the termination judgment is void, the stipulation should be considered as a binding contract under which Gary agreed to relinquish his right to inherit from Stephanie in consideration for the forgiveness of past and future child support obligations for the child. Gary replies to this last point by suggesting that applying such a rule here would essentially permit the non-judicial termination of parental rights through contract, and that such contracts should be considered to be against public policy.

Gary argues for his second point on appeal that the modification judgment was also subject to collateral attack and void for the reason that the stipulation and judgment purporting to terminate his parental rights was obtained via fraud. Specifically, Gary claims that the attorney who presented him with the stipulation previously represented him and Joan jointly in the conservatorship proceeding, and Gary did not realize that the attorney was now representing only Joan in the modification proceeding. Due to that confusion, Gary claims that he did not fully read the stipulation, nor did he understand that the stipulation stated that he would waive his rights to inherit from the children. Joan replies by alleging that Gary was aware of the nature of the attorney's representation, and had hired his own counsel and sought to disqualify the attorney from representing her in the modification proceeding (upon grounds of conflict of interest arising from the joint representation in the conservatorship proceeding). Joan also points to an affidavit filed by her counsel indicating that he observed that Gary fully read the stipulation.

Joan also argues that the probate court was correct in denying Gary's fraud claim, as it was raised well outside the one-year limit within Rule 74.06. Joan also takes the positions that Gary failed to make a *prima facie* claim of fraud and that he is not entitled to equitable relief in his collateral attack of the modification judgment upon the grounds that Gary is not free from fault, neglect or inattention in failing to contest the modification judgment for over three years.

Lastly, Gary argues that the probate court erred in summarily denying his motion to file amended objections to the proposed settlement and therefore apparently disregarding the subject-matter jurisdiction and fraud claims raised against the modification judgment purporting to terminate his parental rights. Joan replies, arguing that Gary failed to establish his legal standing to contest the final settlement, so the motion for leave was properly denied.

### Analysis

The parties assume without discussion that an heir of a protectee has legal standing to raise issues regarding the administration of a conservatorship estate. The guardianship code, Chapter 475, in fact contains no provision for exceptions or objections to final settlements of conservators.[3] This issue was addressed in *In re Estate of Sweeney*, 899 S.W.2d 886, 888 (Mo.App.1995), where the court noted ap-

---

**3.** Section 473.590 specifically addresses the filing of disputes regarding the final settlement of decedent's estates.

provingly the expression of a learned commentator that such objections have been made by "long established custom" so "that it is no doubt established as a rule of law." (*quoting 4B John A. Borron, Jr.,* Missouri Practice, Probate and Surrogate Laws Manual, § 475.290, p. 206 (1995)). Allowance of such objections is also consistent with the provisions of § 475.290, RSMo (providing for notice of final settlement and that the court can examine and correct the settlement), and § 475.020, RSMo (providing that rules regarding decedent's estates apply to guardianships and conservatorships when applicable and not inconsistent with Chapter 475).

Similarly, there is no express provision in Chapter 475 limiting the concept of standing to "interested persons." Section 472.010(15), RSMo, however defines "interested persons" and is made applicable to Chapter 475 by § 474.020, RSMo. An "interested person" includes "heirs, devisees, spouses, creditors or any others having a property right or claim against the estate of a decedent being administered and includes children of a protectee who may have a property right or claim or an interest in the estate of a protectee." Although the statute facially would suggest that an heir has a statutory right to raise objections within a conservatorship proceeding, § 472.010(15) further provides that the categories of individuals meeting the definition of interested persons "may vary at different stages and different parts of a proceeding and must be determined according to the particular purpose and matter involved."

On the basis of this latter language, the appellate courts have generally held that heirs do not have standing in guardianship cases. *See In re Walker,* 875 S.W.2d 147, 149 (Mo.App.1994). This holding also rests upon the proposition that "no one is heir to the living." *Id. (quoting State ex rel. Goodloe v. Wurdeman,* 286 Mo. 153, 227 S.W. 64, 66 (1910)). *Walker* and related cases take the position that as an heir only has an expectancy of a future property interest, heirs do not have sufficient property interest to entitle them to interfere with conservatorship proceedings.

Here, however, the protectee is deceased. As such, *Walker* and the cases upon which it relies are readily distinguishable, as those cases involved disputes raised by heirs of living protectees. Those cases counsel, however, that we must still consider whether the party raising the objection within the conservatorship proceeding indeed possesses a vested property interest in the protectee's estate, or whether the party still only has an expectancy interest. If the latter holds true, then *Walker* counsels that the party does not possess standing to raise an objection to the final settlement of the conservatorship.

The case of *Houston v. Zaner,* 683 S.W.2d 277 (Mo.App.1984) is instructive. *Houston* arose out of a guardianship proceeding where the protectee had died, and the protectee's nephew (who was the primary beneficiary of the protectee's will) raised a contest to the final settlement of the guardianship upon the grounds that excessive fees had been awarded to the guardian and attorneys for the guardianship. *Houston,* 683 S.W.2d at 279. In that case, this court held that the nephew had "an actual and justiciable [property] interest" as the primary beneficiary of the deceased protectee's will. As such, the nephew was found to have standing to contest the final settlement within the guardianship proceeding. *Id.* at 281.

■ In light of *Houston,* we hold that Gary, if truly an heir to the deceased protectee, has standing to object to the final settlement of the conservatorship proceeding below. This court must then address the points raised by Gary on ap-

peal, in order to determine whether he is indeed an heir of the protectee. This determination will turn on whether the modification judgment entered in 1997 terminated Gary's parental rights (including his rights to inherit from the protectee through intestate succession) or whether that judgment was void *ab initio*.

 Both parties agree that Gary's claim constitutes a collateral attack on the 1997 modification judgment:

The taking of proceedings in the action in which a judgment is rendered to have the judgment vacated or reversed or modified by appropriate proceedings whether in the trial court or in appellate court is a direct attack upon the judgment. So also, the taking of independent proceedings in equity to prevent the enforcement of the judgment is a "direct attack".... Where a judgment is attacked in other ways than by proceedings in the original action to have it vacated or reversed or modified or by a proceedings in equity to prevent its enforcement, the attack is a "collateral attack".

*Flanary v. Rowlett*, 612 S.W.2d 47, 49 (Mo.App.1981) (*quoting* Restatement of Judgments § 11 cmt. a (1942)). Collateral attack upon judgments is generally not allowed in part because of the need for finality and certainty in judicial decisions.

 A collateral proceeding may not generally be used to contradict or impeach a final judgment. *La Presto v. La Presto*, 285 S.W.2d 568, 570 (Mo.1955). However, a void judgment "is entitled to no respect, and may be impeached at any time in any proceeding in which it is sought to be enforced or in which its validity is questioned by anyone with whose rights or

interests it conflicts." *Id.* Gary contends that the 1997 modification judgment is void in several respects because it did not comply with the statutory procedures for terminating parental rights § 211.444, RSMo Cum.Supp.1996 and § 211.462, RSMo, 1994.

Gary first contends that the court did not comply with the procedure to terminate parental rights with the consent of a parent set forth in § 211.444, RSMo Cum. Supp.1996 which states:

1. The juvenile court may, upon petition of the juvenile officer, or the court before which a petition for adoption has been filed pursuant to Chapter 453, RSMo, terminate the rights of a parent to a child if the court finds that such termination is in the best interests of the child and the parent has consented in writing to the termination of his or her parental rights.

2. The written consent required by subsection 1 of this section may be executed before or after the institution of the proceedings and shall be acknowledged before a notary public. In lieu of such acknowledgment, the signature of the person giving the written consent shall be witnessed by two adult persons who are present at the execution whose signatures and addresses shall be plainly written thereon and who determine that the consent is knowingly and freely given. The two adult witnesses shall not be the prospective parents. The notary public or witnesses shall verify the identity of the person giving the consent.

Specifically, Gary contends that the consent was not signed in the presence of a notary public. He raises no objections to the substantive content of the consent.[4]

4. Section 211.444 was amended in 1997, effective after the date of the termination judgment, to require that the consent comply with

the requirements of § 453.030. The latter section required the department of social services to develop a written consent form that is

Gary next contends that the judgment is void because of failure to appoint a guardian *ad litem* for Stephanie as required by § 211.462.

■ Missouri courts' power to terminate parental rights does not derive from the common law. *In the Interest of W.F.J.*, 648 S.W.2d 210, 214 (Mo.App. 1983). Instead, that authority flows exclusively from statute, specifically §§ 211.442 to 211.487, RSMo. *Id.* As the court's authority to terminate parental rights is a creation of statute, "strict and literal compliance with the statutory authority" is required in exercising that authority. *Id.*

Gary argues that the modification court's deviation from the statutory procedures deprived that court of jurisdiction to terminate his parental rights. Joan suggests that these failures to comply with statutory requirements merely render the judgment irregular and therefore voidable, rather than void. If so, Joan urges, then Gary cannot prevail because one can only collaterally attack a void judgment, not one that is merely voidable.

■ A judgment is void if the "court that rendered judgment lacked jurisdiction of the subject matter, or of the parties, or acted in a manner inconsistent with due process." *K & K Investments, Inc. v.. McCoy*, 875 S.W.2d 593, 596 (Mo.App.1994) (*quoting* BLACK's LAW DICTIONARY 1574 (6th ed.1990)). Here, there is no dispute that the modification court had personal jurisdiction over the parties and subject-matter jurisdiction to conduct a modification proceeding.[5] The true question, however, is whether the modification court possessed subject-matter jurisdiction to terminate Gary's parental rights in a modification

proceeding conducted presumably pursuant to Chapter 452.

■ Joan argues that the modification court's deviations from statute were merely procedural errors that did not deprive the modification court of jurisdiction, citing *Beatty v. Conner*, 923 S.W.2d 455 (Mo. App.1996). She relies upon language from *Beatty* distinguishing statutes which confer jurisdiction upon a court to determine an issue and statutes which merely concern "timing and procedural issue[s]." *Beatty*, 923 S.W.2d at 459. *Beatty* involved a default judgment arising out of a garnishment proceeding. Like the power to terminate parental rights, the authority to issue garnishments flows solely from statute (and now from Supreme Court Rules). *See Landmark Bank of Ladue v. General Grocer Co.*, 680 S.W.2d 949, 953 (Mo.App. 1984). Gary responds that this court held in *Beatty* that strict compliance with statute or rule was "essential to confer and support jurisdiction in a garnishment proceeding." *Id.* (*citing State ex rel. Bagnell Investment Company v. Luten*, 647 S.W.2d 539, 541 (Mo. banc 1983)). We find *Beatty* to be distinguishable and have no application here. Although the court discussed at length the sometimes overlapping meanings of "void" and "irregular" as applied to judgments, it ultimately did not need to resolve the issue cleanly because *Beatty* involved a direct, not collateral, attack on a judgment. Joan is correct that a merely irregular judgment cannot be collaterally attacked. *See State ex inf. Voigts v. City of Pleasant Valley*, 453 S.W.2d 700, 704 (Mo.App.1970). Joan contends that the defects that Gary claims make the judg-

more complete and thorough than the form utilized here.

5. Gary does not argue that the family court of Clay County did not have general jurisdiction

to terminate his parental rights. Prior to 1993 that jurisdiction was vested exclusively in the juvenile court. § 211.031.

ment void, at best, would only render it irregular.

Gary contends a proceeding for termination of parental rights arising from the voluntary consent of a parent can only be initiated through a petition for termination of parental rights filed *by the juvenile officer* or a petition for adoption filed under the provisions of Chapter 453, RSMo. *See* § 211.444, RSMo (1996). Indeed a complete review of the termination sections of Chapter 211 in effect at the time of the modification judgment reveals that only the juvenile officer was statutorily authorized to file actions for termination of parental rights in non-adoption cases. Although § 211.444, RSMo, has remained unchanged in this respect, § 211.447, RSMo, was amended in 1998 to expressly authorize the filing of a termination action by the Division of Family Services. In fact, the Division is now, in some cases, a "mandatory filer," while the juvenile officer has discretion to file an action subject to a direct order by a judge to file a petition. *See* §§ 211.447.1 to 211.447.4, RSMo. The 1998 amendments also provide that "if such a petition has been filed by another party, the juvenile officer or division shall seek to be joined as a party to the petition" under certain conditions therein specified. Section 211.447.2, RSMo. We are aware of no authority interpreting this provision and, because it had not been adopted at the time of the present judgment, we need offer no opinion of its meaning. Joan presents us no authority or even argument that someone other than the juvenile officer could, in 1997, properly have filed a termination of parental rights action not joined with an adoption under Chapter 211. Rather, she contends that lack of authority, if existent, does not render the judgment void *ab initio*.

Gary contends that the decision in *Schleisman v. Schleisman,* 989 S.W.2d 664 (Mo.App.1999) is dispositive. There the father signed a stipulation agreeing that the father would no longer have to pay child support, would not exercise his visitation rights and would execute a consent to termination of parental rights and future adoption. *Id.* at 666. Later mother brought a motion to modify seeking an increase in support and father set up the stipulation as a bar to her claim. It is true, as Gary contends, that the *Schleisman* court said that a voluntary termination of parental rights required a petition to be filed by the juvenile officer, the holding of a dispositional hearing and the appointment of a guardian litem. *Id.* at 672. Conversely, it is true as Joan responds that the court posited the issue as "whether a parent's consent to terminate parental rights and for future adoption, *without subsequent approval,* is sufficient to terminate his or her child support obligations." *Id.* at 671 (italics added). Although *Schleisman* did hold the termination of parental rights claimed by father to be invalid, that holding is not tantamount to a holding that the trial court lacked jurisdiction. In fact, there was no prior judgment on the stipulation of the parties and thus no question of the voidness or voidability of a judgment presented.

Other decisions, not cited by the parties, have recognized that termination of parental rights is an "awesome power" exercised by the State and that strict and literal compliance with the statutory authority is necessary. *State of Washington ex rel. Lewis v. Collis,* 963 S.W.2d 700, 704 (Mo. App.1998). Appellate courts have recognized that:

> Although § 211.444 requires, in the circumstances here, that the parent, whose parental rights are to be terminated, consent in writing to the termination, it

does not permit that parent to file the petition. Consent alone is not sufficient. The petition must be filed by the juvenile officer and the evidence must support a finding that termination is in the best interests of the child. *In the Interest of B.L.G.*, 731 S.W.2d 492, 499 (Mo.App.1987).[6] Again these cases do not involve, because not present, a question whether purported terminations of parental rights were void and subject to collateral attack, or merely erroneous and irregular, subject only to direct attack.

 The decisions, however, clearly reflect certain basic principles. The juvenile officer plays a vital role in the termination procedure. He "must act in a role beyond that of a mere tool of a parent whose primary motivation is that of avoiding parental responsibilities." *Id.* at 499. "The filing of the petition should be the product of sound discretion based on a reasonable amount of prior investigation." *Id.; see also, In the Interest of R.A.S.*, 826 S.W.2d 397, 400 (Mo.App.1992). "The termination of parental rights does not merely sever the rights of the parent to the child, but also severs the child's right to the parent." *In the Interest of R.A.S.*, 826 S.W.2d at 401. The legislature has also recognized the legal and social significance of a termination action. Section 211.447, RSMo, directs that the court consider and protect among other things, the constitutional rights of all parties in the proceedings and the birth family relationship when possible and appropriate. Other provisions of Chapter 211 require social studies to be provided to the court (§ 211.455.3),

appointment of guardians *ad litem* to protect children's interests (§ 211.462.1), dispositional hearings (§ 211.459), and the right to counsel despite inability to pay (§ 211.462.2). These principles evidence a shared legislative and judicial recognition that the parent-child relationship is a fundamental tenet of a shared social fabric and should be severed in the interests of the child, parent and the State only when the power is exercised in compliance with strict legal authority and rules.

 These principles lead us to the conclusion that a judgment that purports to terminate parental rights can arise only pursuant to the statutory authority provided in Chapter 211[7], and specifically here where based on a claim of consent pursuant to § 211.444. The modification court in 1997 did not recite in its judgment any statutory authority under which it proceeded. Its clear import and that of the motion upon which it ruled was, however, to modify an earlier decree of dissolution of marriage. Modifications of such decrees are authorized by § 452.370 (as to child support) and § 452.410 (as to custody). No power is granted a court under Chapter 452 to terminate parental rights. In *La Presto*, the Supreme Court said:

The failure to distinguish between the "erroneous exercise of jurisdiction" and the "want of jurisdiction" is a fruitful source of confusion and errancy of decision. In the first case the errors of the trial court can only be corrected by appeal or writ of error. In the last case its judgments are void, and may be assailed by indirect as well as direct attack. The

**6.** *In the Interest of B.L.G.* concerned a termination of parental rights proceeding initiated by the juvenile officer at the behest of a father who was attempting to have his parental rights (and support obligation) terminated as to an adopted child. Another attempt by a parent to initiate a termination of parental rights proceeding arose in *In the Interest of*

*R.A.S.*, 826 S.W.2d 397 (Mo.App.1992). Neither case is cited or discussed by the parties to this appeal.

**7.** Section 453.040 provides for termination of parental rights under chapter 211 as a separate count in an adoption proceeding.

judgment of a court of general jurisdiction, with the parties before it, and with the power to grant or refuse relief in the case presented, though (the judgment is) contrary to law as expressed in the decisions of the Supreme Court or the terms of a statute, is at most only an erroneous exercise of jurisdiction, and as such is impregnable to an assault in a collateral proceeding.

*La Presto v. La Presto,* 285 S.W.2d 568, 571 (Mo.1955). We hold that a court in a Chapter 452 proceeding does not have the jurisdiction or power to grant a termination of parental rights based upon a pleading filed by a parent. Lacking that power, the modification judgment purporting to terminate the parental rights of Gary as to Stephanie is void.

We are mindful that many would not see equities in Gary's position. Nor do we. Nevertheless, our review must be guided by our perception of rules of law, which do not distinguish between the more and less favored. As stated above, a court's authority to terminate parental rights flows exclusively from statute, and *strict compliance* with the statutory requirements is mandatory. *See In the Interest of W.F.J.,* 648 S.W.2d 210, 214 (Mo.App.1983). Here, a termination of parental rights proceeding was not properly initiated, and therefore the court's jurisdiction to terminate Gary's parental rights was not properly invoked. The failure to appoint a guardian *ad litem* for the child was a further deviation from statutory requirements that caused the protectee's interests to be unrepresented in the purported termination proceeding. Given these serious defects in the proceedings which attempted to terminate Gary's parental rights, we hold that the judgment purporting to terminate his parental rights was void *ab initio* and could not operate to sever Gary's right to inherit from the deceased child through intestate succession. Because of this determination we need not

consider Gary's arguments that the failure to appoint a guardian *ad litem* or follow other procedural requirements of Chapter 211 renders the judgment void or merely irregular as contended by Joan. Likewise, we do not consider or resolve the issues arising from Gary's claim that the modification judgment was obtained by fraud.

### Effect of Gary's Delay in Attacking Judgment

Even if this court should hold that the modification judgment purporting to terminate Gary's parental rights to be void, Joan suggests that the probate court's judgment should not be disturbed because appellant failed to raise the invalidity of the modification judgment within a reasonable time as required by Rule 74.06. Rule 74.06, however, is primarily concerned with direct attacks on judgments (including independent equitable proceedings to set aside judgments), as distinguished from collateral attacks upon judgments. *See In re Marriage of Brown,* 878 S.W.2d 94, 99 (Mo.App.1994) (Crahan, J., dissenting). So there is a threshold question of whether the limits of Rule 74.06 apply to a collateral attack on a void judgment.

■ The reported cases are clear that an attack upon a void judgment is not subject to the "reasonable time" requirements of Rule 74.06. *Williams v. Williams,* 932 S.W.2d 904, 905–06 (Mo.App.1996); *State ex rel. Houston v. Malen,* 864 S.W.2d 427, 430 (Mo.App.1993) (questioned on other grounds by *Brackett v. Laney,* 920 S.W.2d 597 (Mo.App.1996)). In *Williams,* the Eastern District held that a direct attack filed eight years after entry of a void default judgment was timely under Rule 74.06. *See Williams,* 932 S.W.2d at 905–06. Similarly, in *Houston,* the appellate court approved of a direct attack upon a judgment filed four years and three

months after the judgment was entered. *See Houston,* 864 S.W.2d at 430. A void judgment is subject to direct or collateral attack at any time. Additionally, principles of equity such as laches or estoppel cannot act as a bar to an attack upon a void judgment. *See Houston,* 864 S.W.2d at 430; *Hampton v. Hampton,* 536 S.W.2d 324, 326 (Mo.App.1976). Under the holdings of *Houston* and *Williams,* Gary's three-year delay in attacking the modification judgment cannot bar him from collaterally attacking that void judgment in the conservatorship proceeding.

Joan, nevertheless, claims that we should affirm the trial court's judgment under the principle that a proper result reached even for the wrong reason should not be reversed. She cites *Business Men's Assurance Co. v. Graham,* 984 S.W.2d 501, 506 (Mo. banc 1999). This principle has been applied in many contexts ranging from rulings on summary judgments to evidentiary rulings and grants of a new trial. It is obviously a corollary of the principles expressed in Rule 84.13(b) ("No appellate court shall reverse any judgment unless it finds that error was committed by the trial court against the appellant materially affecting the merits of the action.") and in Rule 84.14 ("Unless justice otherwise requires, the court shall dispose finally of the case. No new trial shall be ordered as to issues in which no error appears."). We, therefore, address whether there is another basis or theory in the record to support the trial court's judgment that Gary did not have standing.

Joan argues that the stipulation is nevertheless binding as a contract between Gary and herself. She contends that the stipulation was a valid contract whereby Gary waived his right to inherit from his children. Joan relies upon *Hampton v. Hampton,* 536 S.W.2d 324, 326 (Mo.App.

1976), suggesting that even though a provision in a property settlement agreement incorporated into the decree was not authorized by statute (and hence void and subject to collateral attack), it was still enforceable as a valid contract between the parties. Joan misreads *Hampton* which stated, "The decree makes no mention of a property settlement being incorporated therein...." *Id.* Nor do we agree with Joan that *Hampton* supports the proposition that an agreement for a judgment which is admittedly void because of lack of jurisdiction is enforceable as a contract. Joan's argument somewhat misses the mark. The properly stated issue is whether the stipulation is a valid waiver of the right of inheritance without regard to the modification judgment which we have held was void and unenforceable as a judgment entered by consent or otherwise.

The parties have cited to us no cases involving issues of waiver of inheritance rights. The most common example, we observe, is in the case of ante-nuptial agreements whose enforcement in the probate context is governed by § 474.120, RSMo. In the context of renunciations of rights after the decedent's death (assuming which, though we do not decide) principles governing renunciation might apply to a pre-death waiver. There was a statute, § 474.490, RSMo, dealing with renunciations in effect at the time of the stipulation but it was repealed later that same year. *See* 1997 Mo. Laws 1220. There is some debate among commentators whether the replacement provisions (Chapter 469 "Disclaimers of Property") even apply to intestate estates. *See 5B John A. Borron, Jr., Missouri Practice—Probate Law and Practice* § 1231 (3rd Ed.2000).

■ We do not disagree with Joan's general contention that the stipulation may theoretically be binding as a contract. If so, however, it is subject to various con-

tract defenses and principles including, for example, illegality, lack of consideration, fraud etc. In fact, Gary alleged below that the contract was executed under duress and fraud. Because no hearing was held in the court below, there was no evidentiary development of any facts concerning the contract except for affidavits attached to the parties' pleadings. Nor do the parties, in our view, adequately discuss or develop any of the legal issues surrounding the stipulation as a contract.

Our duty to finally dispose of a case rather than reverse presupposes a sufficient record and evidence. This duty assumes "we can perform this function with some degree of confidence in the reasonableness, fairness and accuracy of our conclusion." *In re Estate of Kranitz*, 610 S.W.2d 300, 304 (Mo.App.1980). We lack such a record here. In such a case justice requires a reversal and remand. *Id.* Any hardship is additionally lessened because the validity of the contractual waiver may be litigated not only with regard to the standing issue in the conservatorship estate but potentially in the administration of decedent's estate by means an action to determine heirship.

The judgment of the trial court is reversed and remanded for hearing upon the objections filed to the final settlement.

PAUL M. SPINDEN, Chief Judge, and JAMES M. SMART, JR., Judge, concur.