**STATE of Missouri ex rel., DIVISION OF FAMILY SERVICES and Kelly Bullock, Respondents,**

v.

**William E. BULLOCK, Appellant.**

**No. 19917.**

Missouri Court of Appeals,
Southern District,
Division Two.

July 18, 1995.

Motion for Rehearing and/or Transfer to Supreme Court Denied Aug. 8, 1995.

Application to Transfer Denied
Sept. 19, 1995.

**511**

Roy W. Brown, Bruce B. Brown, Kearney, for appellant.

Brian Keedy, Asst. Pros. Atty., Camden County, Camdenton, for respondents.

PARRISH, Judge.

William E. Bullock (father) appeals a judgment of contempt and order of commitment for failure to pay child support. This court affirms the judgment of contempt, reverses the order of commitment and remands.

Kelly S. Bullock (mother) and father are parents of Nicole Marie Bullock, born May 7, 1978, and Jenny May Bullock, born May 1, 1981. Mother and father's marriage was dissolved February 7, 1983, in Camden County Circuit Court Case No. CV182–233DR. She received custody of the children.

Mother and father were also parties to a separate action for child support enforcement, Camden County Circuit Court Case No. CV182–204DR. Father was ordered to

pay child support of $261 per month ($130.50 per child). That judgment was entered September 7, 1982. On January 22, 1987, the director of the Missouri Division of Child Support Enforcement entered an administrative order, pursuant to § 454.476, RSMo 1986, for father to pay the monthly child support together with $50 per month on its arrearage.

The contempt proceeding which is the subject of this appeal was initiated by a motion for contempt filed January 8, 1992, by the prosecuting attorney of Camden County. The motion alleged that father had willfully failed to pay child support. The trial court ordered father to appear and show cause why he should not be held in contempt of court for willfully and intentionally disobeying the order to pay child support.

The contempt proceeding was tried June 28, 1993.[1] The trial court held father in contempt of court for intentionally failing to pay child support. It found that father owed mother $8,233.71 and the state, as mother's assignee, $16,842.40. He was ordered confined in the county jail until such time as he purged himself of the adjudged contempt by paying the child support owed.

Father presents four points on appeal. The first three points collaterally attack the child support judgment entered in No. CV182–204DR, the judgment that ordered father to pay child support in the amount of $261 per month.

■ "Judgments are conclusive of the matters adjudicated and are not subject to collateral attack except on jurisdictional grounds." *K & K Investments, Inc. v. McCoy*, 875 S.W.2d 593, 597 (Mo.App.1994). A court has "jurisdiction" if it has judicial authority over the subject matter acted upon, judicial authority to act as to the persons before it, and judicial authority to render the order entered. *Scott County Reorganized R–6 School Dist. v. Missouri Commission on*

*Human Rights*, 872 S.W.2d 892, 893 (Mo. App.1994).

■ Point I contends the September 7, 1982, judgment was void because "[t]he petition for child support . . . contains an allegation that [mother] had assigned her support rights to the state of Missouri, a copy of which was supposed to be attached thereto and incorporated therein by reference." It states "[t]his document" was not in the court file; that "it is unknown whether it ever was a part of the file." Father contends the trial court did not have authority to enter the support order because of the alleged pleading impropriety.

The petition in No. CV182–204DR says, "Petitioner, Kelly Bullock, has assigned her support rights to the State of Missouri, a copy of such assignment being attached hereto and incorporated herein by reference; and, therefore, Petitioner, Kelly Bullock, has been referred to the Prosecuting Attorney for the purpose of securing support form [sic] Respondent." The statement pleads the legal effect, as understood by plaintiff, of the written assignment although no copy of the assignment was attached to the petition.

The purpose of the lawsuit was not to obtain judicial interpretation of the instrument. The statement pleading the legal effect of the instrument was all that was required. *City of St. Charles v. Union Electric Co. of Missouri*, 185 S.W.2d 297, 302 (Mo. App.1945). The petition was sufficient to permit the trial court to render its order.

■ Further, father could have moved to dismiss the petition for failure to state a claim upon which relief could be granted, or had he desired the petition to be more definite, could have moved for a more definite statement. *See* Rule 55.27(a)(6) and (d). By failing to do so within the time in which he was permitted to plead—he filed no responsive pleading—he waived those objections. *Layton v. Pendleton*, 864 S.W.2d 937, 941

1. On May 11, 1992, father filed a motion to modify the dissolution judgment. The motion to modify was also tried June 28, 1993. The dissolution judgment was modified with respect to custody of the children and visitation. The parties were awarded joint legal custody. Father was awarded physical custody of Nicole and

mother was awarded physical custody of Jenny. Each parent was awarded visitation on reasonable occasions with the child who was in physical custody of the other parent. Father was ordered to pay child support for Jenny in the amount of $75 per month, commencing July 5, 1993.

(Mo.App.1993); *Kloos v. Corcoran*, 643 S.W.2d 94, 96 (Mo.App.1982). Point I is denied.

▮ Point II also challenges the trial court's judicial authority to enter the judgment for child support. Point II contends the child support judgment was void because the petition filed in No. CV182–204DR did not allege that the assignment agreement would terminate upon the state discontinuing payment of AFDC benefits to mother. Father asserts that the $8,233.41 he failed to pay mother is therefore not collectable; that the trial court's finding that he was in contempt for willfully failing to pay that amount to mother is erroneous.

Father waived these claims by not moving to dismiss the petition for failure to state a claim upon which relief could be granted and, thereafter, failing to raise the claims by responsive pleading. *Kloos v. Corcoran, supra.* Point II is denied.

▮ Point III contends the child support judgment is void because neither father nor mother were shown to have been present at the hearing in the child support case and the evidence was not sufficient to permit entry of the judgment.

Father was served with process. His (or mother's) absence when the judgment was rendered is of no consequence. Father could have sought trial court review of the sufficiency of the evidence by timely filing a motion to set aside the judgment. If such a motion had been filed and denied, father could have appealed. *Vonsmith v. Vonsmith*, 666 S.W.2d 424, 424 (Mo. banc 1984); *Chowning v. Magness*, 792 S.W.2d 438, 439 (Mo.App.1990); *L.J. Ross Co. v. Vaughn*, 683 S.W.2d 643, 645 (Mo.App.1984). He did not do so within the time permitted.

The trial court, in No. CV182–204DR, had judicial authority to adjudicate the request for child support. It had personal jurisdiction over father and had authority to render orders for payment of child support. The child support judgment does not fail for lack of jurisdiction. *Scott County Reorganized R–6 School Dist. v. Missouri Commission on Human Rights, supra.* It is not subject to collateral attack. *K & K Investments, Inc. v. McCoy, supra.* Point III is denied.

▮ Point IV is directed to the trial court's commitment order. It does not challenge the finding of contempt, only the method by which the trial court's order permits father to purge that contempt. Father contends the commitment order is erroneous because no evidence was presented that demonstrated he was financially capable of paying the arrearage of child support the trial court ordered paid to purge his contempt. He argues that other remedies should have been considered.

The purpose of civil contempt, as contradistinguished from criminal contempt, is to remedy, not to punish: it is to enforce obedience to a judgment by a party the judgment intends to benefit. *Teefey v. Teefey*, 533 S.W.2d 563, 565[1] (Mo. banc 1976). In like manner, the sanctions which follow a judgment of civil contempt are meant to remedy—to coerce compliance—and not as a penalty, as in criminal contempt. *Division of Employment Security v. Weaver*, 614 S.W.2d 729, 731[4–7] (Mo.App.1981). The civil contemnor retains the power to terminate any sanction, even imprisonment, by the act of compliance—an alternative not open to the criminal contemnor. *Chemical Fireproofing Corporation v. Bronska*, 553 S.W.2d 710, 714[5, 6] (Mo.App.1977).

*Wisdom v. Wisdom*, 689 S.W.2d 82, 86–87 (Mo.App.1985).

▮ Thus, in a civil contempt proceeding based on failure to pay money pursuant to a court order, two stages precede commitment. The first is an adjudication of the question of contempt. The party seeking an order of contempt must show the alleged contemnor failed to make the required payment. Thereupon, absent the alleged contemnor proving he or she lacked the ability to make those payments, a judgment of civil contempt may be entered. *State ex rel. Barth v. Corrigan*, 870 S.W.2d 458, 459 (Mo.App.1994).

▮ The second stage is a determination of how the contemnor may purge himself or herself of the contempt. In that respect, if

the contemnor is to be imprisoned, in order to assure he or she has the means to secure release, "[t]he contemnor must have the ability to purge himself of his contempt." *State ex rel. Foster v. McKenzie*, 683 S.W.2d 270, 270 (Mo.App.1984). Otherwise, imprisonment for civil contempt is not justified. *Id.*

The record before the trial court does not address father's present ability to pay the $25,076.11 arrearage. There is, in fact, a suggestion to the contrary. The contempt hearing that is the subject of this appeal followed a hearing on a motion to modify the judgment in mother and father's dissolution case—case No. CV182–233DR. *See* n. 1, *supra.* A copy of the transcript of testimony directed to the motion to modify was filed as part of this record on appeal.

In the modification proceeding, father sought and was granted physical custody of one of the children and a reduction of child support. The trial court reduced the amount of child support father was ordered to pay to $75 per month for the child whose physical custody remained with mother. During that hearing father was asked the following questions and gave the following answers:

Q. Taking into consideration both your former wife's employment or lack of employment and yours, have you—are you suggesting to the Court that the Court award to your former wife the sum of $75 per month for child support for the child, Jennie [sic], that's in her custody?

A. Yes, sir.

Q. And you ask that that begin, like say July 5th.

A. Yes.

Q. —try to work before then and get some money?

A. Yes, if I could. Yes.

From this inquiry, one may infer that father lacked sufficient funds at the time of the contempt hearing with which to pay the substantial arrearage and purge himself of contempt. If so, absent other means for obtaining funds—about which the record on appeal is silent—he did not "ha[ve] the key to his cell in his pocket" so as to enable him to purge himself of contempt. *State ex rel. Foster v. McKenzie, supra.* The record, therefore, does not establish that father's imprisonment for civil contempt was justified. Point IV is granted.

The judgment of contempt is affirmed. The order of commitment is reversed. The case is remanded for further proceedings to determine father's ability to purge himself of contempt in the manner ordered. If father is found capable of purging himself of contempt by paying the total arrearage within a reasonable time, the trial court may re-enter its original order. If not, the trial court may consider other methods, within father's means, by which he may purge himself of the adjudged civil contempt.[2] If other methods are required, imprisonment nonetheless remains a possible method of enforcing payment.

GARRISON, P.J., and CROW, J., concur.

**2.** Father suggests "a reasonable installment plan should have been considered with immediate incarceration as a penalty for noncompliance."

The installment plan is an option available to the trial court.