LUMBERMENS MUTUAL CASUALTY
and Reliance Insurance Company,
Appellants,

v.

Grant THORNTON, et
al., Respondents.

No. WD 57848.

Missouri Court of Appeals,
Western District.

Dec. 5, 2000.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Jan. 30, 2001.

Bernard L. Balkin, Kansas City, for appellants.

Mark W. Brennan, Kansas City, for Respondents.

Before HOLLIGER, P.J.,
BRECKENRIDGE and SMART, JJ.

BRECKENRIDGE, Judge.

Lumbermens Mutual Casualty Company and Reliance Insurance Company appeal the trial court's order granting summary judgment in favor of defendants Grant Thornton.[1] On appeal, Lumbermens and Reliance claim that the trial court erred in granting summary judgment because it failed to recognize the admitted duty of Grant Thornton to carry out their audits of financial statements in accordance with generally accepted auditing standards. Lumbermens and Reliance claim that the trial court, when granting summary judgment, improperly intruded upon the factfinding function of the trier of fact in determining that no such duty existed. Lumbermens and Reliance argue that the determination of what are generally accepted accounting principles and auditing standards and whether those standards were met is a matter for expert opinion testimony. Because both parties offered expert testimony to support their position and it was established that genuine issues of fact existed, this precluded a granting of summary judgment. In addition to the trial court's alleged error concerning the existence of a duty, Lumbermens and Reliance claim that the court erred by ignoring disputed issues of fact concerning Grant Thornton's failure to meet the professional standards required of them. Because this court finds that Grant Thornton's unresolved counterclaim causes the judgment not to be final, this court does not have jurisdiction to hear this case. The appeal is dismissed.

## Factual and Procedural Background

During the 1992 through 1996 fiscal years,[2] Western Container, a corporation affiliated with Americraft Carton Group, Inc., suffered losses in excess of $334,000, as a result of the fraudulent and dishonest conduct of its Controller, Susan J. Horton. Between July 1, 1992, and June 30, 1995, Lumbermens issued fidelity insurance bonds on behalf of Western Container insuring it from fraudulent or dishonest conduct of its employees. Reliance issued similar policies beginning in July 1, 1995. Additionally, during this time, Western Container had employed Grant Thornton to audit its financial statements. While the audits were to be conducted in accordance with generally accepted auditing standards, the engagement letters signed by Western Container and Grant Thornton explained that "an audit is not a special examination designed to detect defalcations or fraud, nor a guarantee of the accuracy of the financial statements and is subject to the inherent risks that errors, irregularities, or illegal acts, if they exist, might not be detected." As required by

---

1. Grant Thornton refers to Grant Thornton, a general partnership, Grant Thornton, LLP, successor to the general partnership, and Kent Gedman, John R. Gunter, Bruce E. Moore and Lawrence J. Redler, the individuals who were general partners of Grant Thornton.

2. The breach of contract and negligent acts were alleged to have occurred during the 1991 through 1995 fiscal years. The losses apparently were attributed to the fiscal year following the acts.

the engagement letters, Grant Thornton received representation letters from Western Container, signed by President Richard M. Horton, Vice–President Rick N. Johnson, and Controller Susan Horton, stating that there had been no irregularities involving management or employees who had significant roles in the internal control structure of Western Container.

During these fiscal years, Controller Susan Horton committed various acts of theft from Western Container. She issued payroll checks to herself in excess of her salary, issued duplicate payroll checks to herself, issued unauthorized checks to herself from the general account, and charged personal purchases to Western Container's credit cards. The total amount of theft over the five fiscal years was reported to be in excess of $334,000.

On June 18, 1996, Western Container filed a proof of loss with both Lumbermens and Reliance to recover the losses suffered as a result of the acts of Ms. Horton. Subsequently, Lumbermens paid Western Container $154,026.73 and Reliance paid $179,999.70. Upon payment, Lumbermens and Reliance received an assignment of claims of Western Container and were subrogated to the rights of Western Container for claims against Ms. Horton and all others who might be responsible for the losses incurred. As subrogees of such claims, Lumbermens and Reliance brought suit against Grant Thornton alleging negligence and breach of contract concerning their performance of the auditing services. Generally, Lumbermens and Reliance claimed in their first amended petition that Grant Thornton failed to analyze, review and assess material weaknesses in Western Container's internal control environment, structure and procedures, and failed to design procedures or provide recommendations that would remedy those weaknesses.

Grant Thornton filed their answer denying these allegations and asserting various defenses. Grant Thornton alleged that as subrogees of Western Container, Lumbermens and Reliance were subject to all of Grant Thornton's defenses against Western Container. Among those defenses, Grant Thornton alleged that the claims of Lumbermens and Reliance were barred by Western Container's breach of contract in that Western Container provided incorrect and false information to Grant Thornton that interfered with the performance of the audit.

Along with their answer, Grant Thornton filed a counterclaim against Lumbermens and Reliance claiming negligence, breach of contract and common law fraud. Grant Thornton stated that they provided audits of the financial statements provided by Western Container. In their claim for negligence, Grant Thornton alleged that Western Container owed a duty to Grant Thornton to provide representations concerning those statements to Grant Thornton in a non-negligent manner and to disclose any irregularities and errors relating to the financial reporting process. Thus, Grant Thornton alleged that Western Container and Ms. Horton acted negligently by supplying misrepresentations about the financial statements. Relying on the financial statements and representations, Grant Thornton issued their audit reports. Next, Grant Thornton claimed that Western Container acted fraudulently in communicating the representations to Grant Thornton and in failing to disclose the irregularities and errors. Finally, Grant Thornton alleged breach of contract in failing to disclose the irregularities and errors relating to the financial reporting process. This breach was based upon signed engagement letters in which Western Container agreed to provide written representations. In the counterclaim, Grant Thornton sought damages, including attorneys' fees and costs, suffered as a result of defending this action.[3] On September 4,

**3.** The basis for Grant Thornton's request for damages is the indemnification and hold-

harmless provisions contained in the engagement letters that state that "the company will

1998, Grant Thornton filed a motion for summary judgment claiming that they did not make material misstatements or omissions and did not fail to disclose any matter that they were obligated to disclose during the audits of the financial statements of Western Container. Grant Thornton further claimed that Western Container's misrepresentations precluded any recovery as a matter of law. In their suggestions in support, Grant Thornton alleged that they had no general duty to report undetected material internal control weaknesses to Western Container and that their audit reports contained no material misstatements. Finally, Grant Thornton claimed that the actions of Western Container in providing misstatements and false representations precluded recovery by Lumbermens and Reliance because Grant Thornton relied on these representations in conducting the audits. Specifically, the representation letters stated that there had been no irregularities involving individuals who had significant roles in the internal control structure. Each of the representation letters were signed by three officers—the President, Vice–President and the Controller. The Controller, Susan Horton, was responsible for the losses.

On July 21, 1999, the trial court found that "[t]he defendants' engagement letters read in conjunction with Western Container's representation letters, clearly demonstrate that no duty existed nor was created under the terms of these letters, that defendants were to report material weaknesses in internal controls to Western Container." Furthermore, the court found that no duty existed under generally accepted auditing standards and that Lumbermens and Reliance were subject to all

defenses against Western Container. On October 25, 1999, the trial court found expressly found that there was "no just reason for delay" and certified the judgment for appeal under Rule 74.01(b). Lumbermens and Reliance appeal the trial court's granting of summary judgment in favor of Grant Thornton.

## Jurisdiction is Not Proper Because the Judgment of Trial Court is not Final

■ Before this court considers the merits of Lumbermens and Reliance's appeal, it must first determine that jurisdiction is proper. While none of the parties address this issue, this court has a duty to determine *sua sponte* whether it has jurisdiction. *Gibson v. Brewer*, 952 S.W.2d 239, 244 (Mo. banc 1997). In order to have jurisdiction to review a lower court's judgment, there must be a final, appealable judgment. *Id.* "An appealable judgment resolves all issues in a case, leaving nothing for future determination." *Id.* If the trial court's judgment is not final, this court is without jurisdiction to consider the appeal, and the appeal must be dismissed. *Id.*

■ In cases involving multiple claims, however, a trial court can, under Rule 74.01(b),[4] enter judgment on fewer than all of the claims and certify the judgment for appeal upon finding that there is "no just reason for delay." *Id.* Yet even when the trial court certifies its judgment as final for purposes of appeal, as the court did in this case, the trial court's determination is not conclusive. *Id.* "It is the content, substance, and effect of the order that determines finality and appealability." *Id.* This court must still decide if the partial judgment actually qualifies as a final judgment.

indemnify and hold us harmless from any liability, damages and legal or other costs which we might sustain in the event such representations are knowingly untrue."

**4.** Rule 74.01(b) reads, in part, as follows:
When more than one claim for relief is presented in an action, whether as a claim,

counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the court may enter a judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay. . . .

*Morris v. Patterson,* 549 S.W.2d 613, 614 (Mo.App.1977).

In discussing the principles and purposes of Rule 74.01(b), the Court in *Committee For Educational Equality v. State,* 878 S.W.2d 446, 451 (Mo. banc 1994), analyzed several federal cases that have construed F.R.C.P. 54(b), which was copied almost verbatim by Rule 74.01(b). The purpose of F.R.C.P. 54(b), like that of Rule 74.01(b), is to "avoid redundant review of multiple appeals based on the same underlying facts and similar legal issues." *Id.* at 451. In determining whether a judgment disposing of less than all claims is final, this court must look to the claim that is the subject of the judgment and decide whether it constitutes one single, yet complete, claim. *See id.* at 451. The term "one claim" constitutes "the aggregate of operative facts which give rise to a right enforceable in the courts." *Id.* Claims are "separate," however, "if they require proof of different facts and the application of distinguishable law, subject to the limitation that severing the claims does not run afoul of the doctrine forbidding the splitting of a cause of action." This court discussed this doctrine in *Creel v. Union Electric Company, Inc.,* 950 S.W.2d 315, 317 (Mo.App.1997), stating that "[t]he test for determining whether or not a cause of action is single, and cannot be split, is: (1) whether the separate actions brought arise out of the same act, contract, or transaction; or (2) whether the parties, subject matter, and evidence necessary to sustain the claim are the same in both actions." (quoting *State ex rel. Todd v. Romines,* 806 S.W.2d 690, 692 (Mo.App.1991)).

The Supreme Court provided further guidance in resolving the issue of finality in *Gibson,* 952 S.W.2d at 244, by stating that "a judgment is final only when it disposes of a distinct 'judicial unit.'" The Supreme Court defined "judicial unit" in *Gibson* as follows:

> The required "judicial unit for an appeal" has a settled meaning: "the final judgment on a claim, and not a ruling on some of several issues arising out of the same transaction or occurrence which does not dispose of the claim." "An order dismissing some of several alternative counts, each stating only one legal theory to recover damages for the same wrong, is not considered an appealable judgment while the other counts remain pending because the counts are concerned with a single fact situation." It is "differing," "separate," "distinct" transactions or occurrences that permit a separately appealable judgment, not differing legal theories or issues presented for recovery on the same claim.

*Id.* (citations omitted).

Here, the trial court entered summary judgment on behalf of Grant Thornton, finding that no duty existed under the engagement letters and the representation letters that required Grant Thornton to report material weaknesses in internal controls to Western Container. Furthermore, the court found that no duty existed under generally accepted auditing standards. The trial court certified its judgment pursuant to Rule 74.01(b), but retained jurisdiction over "all remaining issues and proceedings ... including the Defendants' Counterclaim, ... pending the determination of an appeal by Plaintiffs from the Judgment entered on Defendants' motion for summary judgment." To determine whether jurisdiction over this appeal is proper, this court must decide whether the trial court could certify the judgment for appeal while retaining jurisdiction over the counterclaim.

For a judgment to be final, it must resolve of all of the issues pertaining to the same transaction or occurrence. *Id.* Generally, when considering finality of judgment, if a counterclaim is pleaded, "a finding must be made disposing of the counterclaim." *Wright v. Martin,* 674 S.W.2d 238, 240 (Mo.App.1984). There is an exception, however, when the "finding for a plaintiff necessarily carries with it a finding against the defendant on the defen-

dant's counterclaim." *Id.* This exception has applied, for instance, in actions to quiet title of land where the determination of title in one party precludes ownership by another. *See id.* at 240–41 (concluding that the jury's determination that plaintiff had actual title to the land indicated that they had considered and rejected defendant's claim that she had title by adverse possession).[5] Similarly, where "both parties could not win" nor "could both lose on the issue," the ruling for the plaintiff is an implicit ruling against the defendant. *White v. American Republic Insurance Co.,* 799 S.W.2d 183, 194–95 (Mo.App. 1990).

■ This case does not fall entirely within that exception. If Grant Thornton's counterclaim involved only the indemnification claim, the granting of summary judgment in favor of Grant Thornton would have resolved that issue. If there were no obligations under Lumbermens and Reliance's claims, there would be no need to indemnify. In this case, however, Grant Thornton also sought damages, including attorneys' fees and costs, suffered as a result of defending the action. The court left unresolved the issue of whether Grant Thornton was entitled to damages resulting from defending the lawsuit. In fact, the court explicitly retained jurisdiction over the counterclaim pending the outcome of this appeal. Thus, this court must determine whether the pending counterclaim precludes a final, appealable judgment.

The Southern District in *Hackathorn v. Four Seasons Lakesites,* 959 S.W.2d 954, 955–56 (Mo.App.1998), and the Eastern District in *Boatmen's Trust Co. v. Sugden,* 827 S.W.2d 249, 252 (Mo.App.1992), have both addressed the issue of whether a judgment is final for purposes of appeal where counterclaims for attorneys' fees

and costs were pending and left unresolved by the trial court. While the courts came to differing conclusions, the results were dictated by the nature of the claims involved.

In *Hackathorn,* 959 S.W.2d at 955–56, the Southern District dismissed an appeal where a counterclaim was pending for attorneys' fees and costs. *Hackathorn* involved a 48 count petition, which originally joined 14 other plaintiffs against two defendants involving numerous causes of action relating to the "thwarted attempts to construct boat docks" on their property "located in a development owned by [one of the defendants]." *Id.* at 955 n. 1. The trial court had ordered separate trials on some of the additional counts; other counts had been voluntarily dismissed. *Id.* at 956. Prior to the trial date, the defendant was granted leave to file a counterclaim for attorneys' fees and costs against the Hackathorns and the other party plaintiffs. *Id.* Their counterclaim for attorneys fees' and costs was based upon a remedies provision in the "Declaration of Restrictive Covenants". *Id.* at 956 n. 4. Following a jury verdict in favor of the defendants on one of the plaintiffs' counts, which sought actual and punitive damages arising from allegations of intentional misrepresentation, plaintiffs appealed. *Id.* at 955.

The defendants moved to dismiss the appeal on the basis that the appellate court lacked jurisdiction to review plaintiffs' claim of error on appeal because, *inter alia,* the trial court had not ruled on the defendant's counterclaim. *Id.* at 956. The court concluded that "the counterclaim [was] factually intertwined with the claims of other party plaintiffs, including Plaintiffs Hackathorns' claims for intentional misrepresentation." *Id.* at 957. Thus, the court concluded that "not all claims between the parties [had] been determined

---

**5.** *See also Podlesak v. Wesley,* 849 S.W.2d 728, 730 (Mo.App.1993) (finding that the court's determination that the collector's deed was void *ab initio* and entering summary judgment for plaintiff disposed of defendant's

counterclaim where parties agreed that defendant's interest in the property "ha[d] its origin in, and would be determined by, the validity of the collector's deed in question").

and there [was] no appealable judgment ."[6] *Id.* at 958.

In *Sugden*, 827 S.W.2d at 252, the Eastern District determined that the judgment in that case was final and appealable because it involved an issue that could be "the subject of a separate judgment ." *Sugden* involved the distribution of trustees' fees from several trusts created by William Sample. *Id.* at 251. Boatmen's, as co-trustee, filed a petition asking the court to determine how the fees should be distributed. Boatmen's named as defendants George Slaton, the executor of the estate of the original co-trustee, Margaret Sugden, the successor co-trustee, and the grandchildren of William Sample, the beneficiaries of the trust. *Id.* at 252. Mr. Slaton filed an answer, a counterclaim against Boatmen's including a count of breach of fiduciary duty and a count of unjust enrichment, and a cross-claim against Ms. Sugden "asking the court to determine that the [e]state of [the original co-trustee] was entitled to fees as co-trustees and that the trust limited Boatmen's to $100,000 in fees or fair and reasonable compensation." *Id.* Ms. Sugden filed an answer in which she asserted that she was entitled to two-fifths of the co-trustee's fees as successor co-trustee. *Id.* Finally, the grandchildren filed "an answer, a cross-claim against Sugden, and a counterclaim against Boatmen's, asking the court to construe the trusts and determine a fair and reasonable compensation for the co-trustees." *Id.* The case was submitted on motions for summary judgment. *Id.*

The trial court determined that "under the fee arrangement, Boatmen's was limited to receiving a maximum of $100,000 in fees for each trust." *Id.* Additionally, the trial court ruled that Ms. Sugden was entitled to $1,846,287.56 in fees as co-trustee. The judgment was certified pursuant to Rule 74.01(b), but the trial court "retained jurisdiction over the two counterclaims of [Mr.] Slaton, breach of fiduciary duty and unjust enrichment, the allowance of prejudgment interest, attorney's fees and expenses." *Id.*

Boatmen's appealed, and Mr. Slaton and the grandchildren filed cross-appeals against Boatmen's and Ms. Sugden. *Id.* On appeal, Ms. Sugden raised the issue of "whether the trial court could certify a final judgment while reserving questions of attorney's fees, expenses, and prejudgment interest for later determination." *Id.* Noting that the trial court had broad discretion to enter a partial and appealable judgment, the court found that "the construction of the trust and the distribution of the fees could be the subject of a separate judgment and, thus, the certification of a final and appealable judgment was proper." *Id.*

The facts in *Sugden* are distinguishable from those in the present case. The court in *Sugden* found that there could be separate judgments—one addressing the construction of the trust in determining the distribution of the trustees' fees, and another addressing the issue of attorneys' fees, costs and prejudgment interest based upon counterclaims alleging the trustee breached its fiduciary duty and was unjustly enriched. The judgment that was certified as final for purposes of appeal concerned only the construction of the trust in determining the distribution of the trustees' fees. The counterclaims upon which the request for attorneys' fees, costs, and prejudgment interest were based—breach of fiduciary duty and unjust enrichment—were not dependent on the same facts, law or evidence as was the issue of construing the trust to determine the distribution of the trustees' fees. Thus, the court in *Sugden* correctly determined that the certification of a final and appealable judgment was proper.

---

**6.** In *Hackathorn*, the trial court had also failed to "expressly designate" its judgment as final under Rule 74.01(b). *Id.* at 956. While this was additional reason for the court to dismiss the appeal, the fact that the counterclaim was still pending was the primary basis of the court's dismissal of the appeal. *Id.* at 958.

The facts in *Hackathorn,* on the other hand, are analogous to the facts in this case. The defendants in *Hackathorn* alleged in their counterclaim that they were entitled to attorneys' fees and costs expended in defending against the claims raised in the plaintiffs' petition. Similarly, in Grant Thornton's counterclaim for negligence, common law fraud and breach of contract, they requested attorneys' fees and costs expended in defending against Lumbermens and Reliance's claims of negligence and breach of contract. Thus, like the damages requested by the defendants in *Hackathorn,* the damages Grant Thornton requested in their counterclaim would not arise independent of the original claims asserted by Lumbermens and Reliance.

Except for the additional claim of common law fraud in Grant Thornton's counterclaim, the same causes of action, negligence and breach of contract, are asserted in both the petition and the counterclaim. The allegations and claims of both parties arise out of the same series of transactions, specifically, the contracts formed by the engagement letters in which Grant Thornton agreed to provide auditing services and Western Container agreed to provide financial information and certain representations. The engagement letters are crucial in determining whether Grant Thornton was negligent in conducting their services or whether Western Container was negligent or fraudulent in providing information to Grant Thornton. The engagement letters are also the contracts that Lumbermens and Reliance alleged Grant Thornton breached and Grant Thornton alleged Western Container breached. Moreover, Grant Thornton based their request for damages in their counterclaim upon the indemnification provisions of the engagement letters.[7]

Here, as in *Hackathorn,* the counterclaim is so "factually intertwined with" the reimbursement claims of Lumbermens and Reliance that the court's decision on summary judgment cannot be final without disposing of the counterclaim. Because not all claims have been determined, there is no appealable judgment. *See Hackathorn,* 959 S.W.2d at 958. Without jurisdiction, this court may not review the trial court's order granting summary judgment, and the points raised by Lumbermens and Reliance on appeal will not be addressed.

The appeal is dismissed.

All concur.

---

**7.** The 1991 engagement letter contained in the record does not include the indemnification provisions contained in the subsequent letters. While this may be relevant in the trial court's consideration of the counterclaim, it does not affect this court's decision.