In re the **MARRIAGE OF Christine M. BOSTON and Ronald H. Boston.**

**Christine M. Boston, Petitioner– Respondent,**

v.

**Ronald H. Boston, Respondent– Appellant.**

**No. 24915.**

Missouri Court of Appeals, Southern District, Division One.

May 23, 2003.

Richard D. Crites, Springfield, for appellant.

Kay A. Van Pelt, Springfield, for respondent.

PHILLIP R. GARRISON, Judge

This case had its genesis in a default dissolution of marriage decree entered in 1998 on the petition of Christine M. Boston ("Wife"). In that decree, Ronald H. Boston ("Husband") was ordered to pay Wife periodic maintenance of $750 monthly, which was designated "non-modifiable by the parties or the court"; to pay child support of $750 per month; to provide a life insurance policy on his life in the amount of $150,000;[1] to maintain a disability insurance policy providing at least $1,500 in monthly coverage with the minor child to be "irrevocable beneficiary"; and to reimburse Wife for the monthly cost of health insurance in the amount of $290.33.

Almost two years later, on August 11, 2000, Husband filed a motion in two counts. Count I was a motion to vacate, set aside, and construe the 1998 dissolution decree. Count II was a motion to modify the dissolution decree by which he sought to decrease child support payments, decrease or terminate maintenance, and award him specific unsupervised visitation privileges. Wife filed a motion to dismiss both counts of Husband's motion.

On March 26, 2001, the trial court sustained Wife's motion to dismiss as to Count I, and denied her motion to dismiss as to Count II "with regard to allegations and requests for relief pertaining to custody and visitation." The motion to dismiss Count II as it related to child support and maintenance was denied, with the proviso that if Husband failed to pay Wife's attorney's fees, which he previously was ordered to pay in the dissolution decree, the motion would be sustained. That judgment for attorney's fees was subsequently satisfied, with the result that the motion to dismiss the portion of Count II of Husband's motion addressing child support and maintenance was denied.

Wife filed an answer to the motion to modify and a motion to hold Husband in contempt for his failure to pay child support, medical support, and maintenance ordered in the dissolution decree. Prior to trial of the motion to modify, Wife also filed a motion to dismiss based on the doctrine of unclean hands and res judicata. That motion was taken with the case. After trial of the motion to modify, the trial court entered its judgment on February 20, 2002, from which part of this appeal flows. It sustained Wife's motion to dismiss Husband's motion to modify maintenance because that issue was "finally resolved in the prior Dissolution Judgment and thus said issue is Res Judicata." The trial court also found a substantial and continuing change of circumstances with regard to the terms of the dissolution decree relating to custody, child support, and visitation. Among other things, it ordered Wife to pay $290.33 monthly for the health insurance that Husband had previously been ordered to reimburse her for. The trial court also rejected the Form 14s submitted by the parties, and found that the presumed correct amount of child support was $750 as calculated in a document identified by the court as "Exhibit 1," which it said was attached to the judgment, and it ordered Husband to pay that monthly amount.[2]

With reference to Wife's motion to hold Husband in contempt, the trial court found

---

1. As discussed infra the decree contained inconsistent provisions requiring both that the minor child of the parties (the "minor child") be named beneficiary of that policy, and also that Wife be named irrevocable beneficiary.

2. This is the same amount of child support ordered in the original dissolution decree.

that Husband was in arrears on his child support, maintenance, and medical insurance premium obligations in the amount of $62,785.78; that his failure to pay those amounts was willful, intentional, and contumacious; that he made no payments on those obligations during the first eighteen months after the dissolution decree although he had the ability to make some of the payments. The court ordered that Husband be committed to the Greene County jail, but ordered the incarceration stayed pending Husband purging himself of contempt by paying $30,000 by April 1, 2002, and by paying the principal balance remaining plus all statutory interest by July 1, 2002. On April 8, 2002, the court found that Husband had failed to make the payment on April 1, 2002, despite being able to do so, and issued a warrant and commitment for him.

Husband contends, in six points, that the trial court erred in denying his motion to vacate portions of the original dissolution decree; in granting Wife's motion to dismiss his motion to modify the previous maintenance judgment; in determining the amount of his child support obligation to be $750; and in ordering him imprisoned for civil contempt.

## I. MOTION TO VACATE, SET ASIDE AND CONSTRUE

In two of Husband's points relied on, he attacks the trial court's denial of his motion to vacate the provisions of the original dissolution decree ordering him to provide insurance on his life, and to provide disability insurance on himself. He argues, in both points, that the dissolution court decree did not have subject matter jurisdiction to enter such orders and, therefore, those portions of the dissolution decree were void and unenforceable, with the result that the dissolution decree was not res judicata. In support, he contends under

one point that such relief was not authorized under Chapter 452,[3] and, under the other point, that such relief was not specifically sought in Wife's petition, as required for the court to have authority to make such an order.

Wife alleged in her petition for dissolution of marriage, *inter alia*, that no arrangements had been made for support of the minor child or for her maintenance, and that she was unemployed and without sufficient resources to provide for her reasonable needs. She alleged that Husband was employed, earning a substantial income and able to provide maintenance for her. She requested that Husband be required to provide health insurance for her and the minor child; "that [Husband] be required to pay [Wife] a reasonable sum of money as and for the support of the minor child retroactive to the date of filing hereof"; "that [Husband] be required to pay a further sum of money as and for the support of [Wife] as maintenance"; "and for such other and further orders, judgments and decrees as this honorable Court may deem just and proper in the premises." As indicated above, Husband failed to respond to the petition and a decree by default was entered against him. That decree included the following:

*(d) Life Insurance:*

(1) Life Insurance: [Husband] shall provide a life insurance policy insuring [Husband's] life in the face amount of $150,000 with [the minor child] as beneficiary.

[Husband] **agrees** to maintain in full force and effect and to designate [**Wife**] as irrevocable beneficiary of the above listed life insurance policy. [Husband's] obligation to name [Wife] as irrevocable beneficiary of said policy shall terminate upon the death or remarriage of [Wife]. Upon the death or remarriage of [Wife],

3. All references to statutes are to RSMo (2000) unless otherwise indicated.

[Husband] **agrees** to designate the **minor children** as irrevocable beneficiaries for as long as [Husband] is obligated to provide child support as provided in this agreement.

. . . .

(b) [Husband] **agrees** to pay or cause to be paid all premiums. . . .

(c) [Husband] **represents and warrants** that the said policy is presently in full force and effect. . . .

. . . .

(e) Upon [Husband's] death, the aggregate death benefit provided for herein, shall be payable in full to the irrevocable beneficiary. Any estate, death, or inheritance tax shall be part of the cost of administration of [Husband's] estate and shall not be a charge against the proceeds of said policies of insurance or against the beneficiary of any said policy.

. . . .

(2) Disability Insurance: [Husband] shall maintain a disability policy which provides at least $1,500[ ] in monthly coverage with the minor child . . . as irrevocable beneficiary. (emphasis added).[4]

■ Before addressing the merits of Husband's two points regarding the motion to vacate, we first must take up Wife's contention that these points are not properly before this court. Wife notes that the request to vacate the portion of the dissolution decree providing for the life and disability insurance appeared in Count I of Husband's motion, and that the trial court dismissed that count on March 26, 2001. She states that the remaining allegations contained in Count II of the motion did not relate to life or disability insurance coverages, and that no appeal was taken from the order of March 26, 2001. She argues that the trial court's order of March 26, 2001 is, therefore, res judicata. Wife also points out that the order of February 20, 2002, from which this appeal is taken, does not relate to the subject matter of the two points on appeal dealing with life and disability insurance. Accordingly, Wife argues that the issues raised therein have not been preserved for appellate review.

■ Wife's argument fails in two respects. First, it presupposes, incorrectly, that the court's dismissal of Count I of Husband's motion in March 2001 was a final, appealable judgment giving us appellate jurisdiction. Generally, a final and appealable judgment disposes of all issues and all parties in the case leaving nothing for future determination. *Culligan Int'l Co. v. H & S Water Enterprises, Inc.*, 956 S.W.2d 468, 470 (Mo.App. S.D.1997). If a judgment adjudicates fewer than all the claims or disposes of fewer than all the parties, the trial court must also make "an express determination that there is no just reason for delay." Rule 74.01(b).[5] Absent such determination and designation, the judgment is not final and an appellate court is without jurisdiction. *Culligan* at 470.

■ Count I of Husband's motion sought to vacate, set aside and construe the provisions of the dissolution decree ordering that the maintenance award was non-modifiable, ordering him to provide life insurance, and ordering him to maintain a disability policy. Count II was a motion to modify the original decree by

---

**4.** As noted, the decree contained inconsistent provisions concerning who was to be the named beneficiary in the life insurance policy, and also contained statements indicating there was an agreement, which was obviously incorrect.

**5.** All references to rules are to Missouri Rules of Civil Procedure (2002) unless otherwise indicated.

decreasing child support, changing visitation, decreasing or terminating maintenance, and terminating the requirement of carrying the life insurance and disability insurance policies.[6] The March 26, 2001 dismissal of Count I did not include a determination and designation that there was no just reason for delay. Accordingly, it was not a final, appealable judgment.[7]

 Second, Wife's argument as to finality of the judgment presupposes that a party waives the ability to contest a void judgment by failing to appeal at the first opportunity. However, that theory is contrary to the rule that a judgment is void from its inception if the court rendering it did not have jurisdiction. *Williams v. Williams,* 932 S.W.2d 904, 905 (Mo.App. E.D.1996). A void judgment is a legal nullity. *Travis v. Contico Int'l, Inc.* 928 S.W.2d 367, 370 (Mo.App. E.D.1996). Being void from inception, a void judgment cannot be brought back to life. *State ex rel. Houston v. Malen,* 864 S.W.2d 427, 430 (Mo.App. S.D.1993). Such a "judgment" binds no one and is entitled to no respect. *State ex. Inf. Voigts ex rel. Mayor, Council and Citizens of Liberty v. City of Pleasant Valley,* 453 S.W.2d 700, 704 (Mo.App.K.C. 1970). Moreover, it is subject to a direct or collateral attack at any time. *Taylor v. Taylor,* 47 S.W.3d 377, 389 (Mo.App. W.D. 2001).

If a judgment is void from its inception, and cannot be brought back to life, it follows that it would not become valid by virtue of a failure to appeal the denial of a motion contesting its validity. This is in keeping with cases holding that estoppel cannot be invoked to preclude a person from attacking the adjudication of a court that was beyond the jurisdiction of the court to make. *See Hampton v. Hampton,* 536 S.W.2d 324, 326 (Mo.App.Spfd.1976). Even more to the point is *Wright v. Mullen,* 659 S.W.2d 261, 263 (Mo.App. W.D. 1983), where the court said, "[a] void judgment can have no conclusive effect, either as res judicata or as an estoppel because the proceeding which culminates in the void judgment is itself without integrity." Therefore, given the fact that Husband's argument under the two points dealing with the motion to vacate is founded on a claim that the court's judgment was void, Wife's argument that res judicata applies to prevent this issue from being decided here is not well taken.[8]

We now turn to a consideration of the merits of Husband's two points attacking the trial court's disposition of his motion to vacate. In the first, Husband argues that Chapter 452 does not authorize a trial

---

**6.** While Count II alleged that the requirement that Husband carry life insurance and disability insurance should be terminated because of his decreased earnings, the prayer of that count sought only to decrease child support, decrease or terminate maintenance, and to award Husband specific unsupervised visitation.

**7.** Even with the designation that there is no just reason for delay, a judgment must also dispose of one entire claim or a distinct judicial unit. *Lumbermens Mut. Cas. v. Thornton,* 36 S.W.3d 398, 402 (Mo.App. W.D.2000). Claims are separate if they require proof of different facts and the application of distinguishable law. *Id.*

**8.** There are cases holding that parties to a void judgment are estopped from raising a claim of lack of jurisdiction to enter the judgment when the party performs the acts required by a void decree, or accepts its benefits. *See State ex rel. York v. Daugherty,* 969 S.W.2d 223, 225 (Mo. banc 1998); *Community Trust Bank v. Anderson,* 87 S.W.3d 58, 65–66 (Mo.App. S.D.2002); *Valdez v. Thierry,* 963 S.W.2d 459, 461 (Mo.App. S.D.1998). There is no suggestion in this case, however, that Husband performed the requirements of the decree now in question, or received any of the benefits of it.

court to order a party to a dissolution action to provide life or disability insurance for the irrevocable benefit of the other party or a minor child. He cites *Williams* and *Taylor* as "authority for this kind of an order being in excess of the subject matter jurisdiction of the court in a dissolution action, and therefore void and unenforceable."

In *Williams,* the court determined that the trial court did not have subject matter jurisdiction to enter a default judgment modifying a 1973 divorce decree because the Dissolution of Marriage Act does not give a court the power to modify a pre– 1974 divorce decree by awarding undistributed marital property. *Id.* at 906. *Taylor* involved a judgment purporting to terminate parental rights in a motion to modify a dissolution decree. The court determined that a trial court in a Chapter 452 proceeding does not have the jurisdiction to grant a termination of parental rights and, therefore, a judgment purporting to do so is void. *Id.* at 388.

■ Neither *Williams* nor *Taylor* directly answers the question raised here, i.e. does the trial court have jurisdiction, in a dissolution action, to require a party to provide life insurance on that party's life with their child as named beneficiary or a spouse as irrevocable beneficiary, or to require that party to obtain disability insurance and to make the minor child of the parties the irrevocable beneficiary?

With commendable candor, and in compliance with Rule 4–3.3(a)(1) of the Rules of Professional Conduct (2002),[9] Wife cites us to *Weiss v. Weiss,* 954 S.W.2d 456 (Mo. App. E.D.1997). In *Weiss,* the trial court

ordered husband to name his children as beneficiaries on his life insurance policies. The eastern district of this court said, "it is well established that a requirement to name children as beneficiaries of life insurance is not authorized under our dissolution act." *Id.* at 459. One of the cases cited by the *Weiss* court was *Niederkorn v. Niederkorn,* 616 S.W.2d 529 (Mo.App.St. L.1981), in which the trial court had ordered a father to maintain his life insurance policies and make his daughter the beneficiary. As in the instant case, the father argued that Chapter 452 governing the dissolution of marriages did not authorize such an order. The appellate court held that "[s]ince the benefits of the life insurance policy are not payable prior to husband's death, a decree that it be kept in effect amounts to an order for posthumous child support.... [S]uch an order would be beyond the authority of the trial court," and was held "invalid." *Id.* at 538–39. *See also Steffens v. Steffens,* 773 S.W.2d 875, 877 (Mo.App. E.D.1989). In *Metropolitan Life Ins. Co. v. Alcorn,* 674 S.W.2d 115, 116 (Mo.App. E.D.1984), the court held that a trial court's order that a father name his child beneficiary on a life insurance policy on his life was void. Based on these cases, we likewise hold that the dissolution court was without jurisdiction to enter that portion of the judgment requiring Husband to carry life insurance and name Wife. or the minor child as beneficiaries. To that extent, the trial court erred in dismissing Husband's motion to vacate.[10]

■ Husband also contends that the requirement that he obtain life and disability insurance is void and extra-jurisdiction-

**9.** Rule 4–3.3(a)(3) of the Rules of Professional Conduct (2002) requires that a lawyer shall not knowingly fail to disclose to the tribunal legal authority in the controlling jurisdiction known to the lawyers to be directly adverse to the position of the client and not disclosed by opposing counsel.

**10.** We need not decide whether the same applies to the trial court's judgment concerning disability insurance, given our treatment *infra* of Husband's point alleging the court went beyond, impermissibly, the relief sought in Wife's petition.

al because Wife's petition did not contain such a request. The petition alleged that Husband had substantial income from employment and also had other funds and resources, and prayed that he be required to pay *Wife* a reasonable sum as and for the support of the minor child and that he also be required to pay a further sum as maintenance for Wife. Nothing in the petition indicated that Wife was requesting that Husband be required to obtain a life or disability insurance policy with the minor child as beneficiary.

 Missouri is a "fact" pleading state as opposed to the notice pleading standard under the Federal Rules of Civil Procedure. *Blessing v. Blessing*, 539 S.W.2d 699, 704 (Mo.App.St.L.1976). That fact has led to the rule that, in a default case, the petitioner is not entitled to relief beyond that requested in the petition. *Id.* Thus, where the defendant in a "divorce" case does not appear at trial, the plaintiff is confined to the facts stated in the petition and to the specific relief requested. *Id. See also Picou v. Picou*, 800 S.W.2d 754, 755 (Mo.App. E.D.1990) ("It is well established that relief granted on default may not be 'other or greater than that which he shall have demanded in the petition as originally filed and served on defendant.'") The reason for the rule is that a defendant may desire to let judgment be entered by default when he is aware of the prayer for relief, but would not be so desirous if he could be subjected to judgment in excess of the relief prayed for. *Vonsmith v. Vonsmith*, 666 S.W.2d 426, 428 (Mo.App. E.D.1983). Accordingly, "[a] court is without subject matter jurisdiction to enter a decree which grants relief beyond that prayed for in the petition." *Id. See also Picou* at 755 (the trial court lacks authority to enter an award containing re-

lief beyond that demanded in the petition); *Mullins v. Mullins*, 91 S.W.3d 667, 673 (Mo.App. W.D.2002) (an award of attorney's fees in a default dissolution decree was without authority and void where the petition did not request that relief).

Based on the above authorities, we conclude that the trial court here did not have authority to enter that portion of the decree requiring the disability insurance and, to that extent, it erred in dismissing Husband's motion to vacate.[11]

## II. MOTION TO MODIFY

In two of Husband's other points, he contends that the trial court erred in granting Wife's motion to dismiss his motion to modify the previous judgment as it related to maintenance, which the court declared to be non-modifiable. In one point, he contends that a decree awarding non-modifiable maintenance without a termination date is void because it is in excess of the court's jurisdiction. In the other point, he contends that the award of non-modifiable maintenance was in excess of the court's jurisdiction and, therefore, void because the petition did not request that relief.

In the dissolution decree the court ordered Husband to pay Wife periodic maintenance of $750 per month with the further provision that "[t]he maintenance order made by this court is non-modifiable by the parties or the court." Husband, in his motion, sought to modify, among other things, the maintenance previously awarded to Wife by decreasing or terminating it, alleging that the dissolution court lacked jurisdiction to order that maintenance be non-modifiable, that the order negated Wife's statutory and continuing obligation to become self-sufficient, and that the or-

---

11. We need not decide, and express no opinion concerning whether the trial court would have had authority to require Husband to obtain and carry a disability policy had it been sought in the petition.

der was void. Wife's motion to dismiss the motion to modify maintenance was sustained "based upon said issue having been finally resolved in the prior Dissolution Judgment and thus said issue is Res Judicata." [12]

We take up first Husband's point alleging the court had no jurisdiction to award non-modifiable maintenance with no termination date. Under Section 452.335.1 maintenance may be granted to a spouse only if the court finds that the spouse seeking maintenance lacks sufficient property to provide for his or her reasonable needs, and is unable to support himself or herself through appropriate employment. Subsection two of that statute provides that maintenance shall be in such amounts and for such periods of time as the court deems just after considering all relevant factors, including the nine specifically enumerated in that statute. Subsection three states:

> The maintenance order shall state if it is modifiable or nonmodifiable. The court may order maintenance that includes a termination date. *Unless the maintenance order which includes a termination date is nonmodifiable, the court may order the maintenance decreased, increased, terminated, extended, or otherwise modified* based upon a substantial and continuing change of circumstances which occurred prior to the termination date of the original order. (emphasis added).

Husband argues that the italicized portion of the statute indicates that if a maintenance order does not contain a termination date it must be modifiable.

Several Missouri cases have considered the propriety of maintenance orders that are non-modifiable. In *Goodin v. Goodin*,

5 S.W.3d 213, 219 (Mo.App. S.D.1999), a case holding that a maintenance order must designate whether it is modifiable or non-modifiable, this court said, "[o]rdinarily, modifiable maintenance awards are preferred" because maintenance is founded on need, and it can extend only as long as the need exists. "If future events pertinent to the issue of maintenance are uncertain, which is usually the case when a maintenance award is 'based on need,' the maintenance award should be modifiable." *Id.*

*In re Marriage of Lawry*, 883 S.W.2d 84, 90 (Mo.App. S.D.1994) involved a plain error review of a non-modifiable maintenance order for an indefinite period of time. In holding that it was error to designate the maintenance as non-modifiable, we said the statute requiring the designation of maintenance as modifiable or non-modifiable does not bestow unfettered discretion on the trial court, and just as an order terminating maintenance at a definite date in the future must be supported by substantial evidence of an impending change of the parties' circumstances, "a maintenance order providing that it is 'non-modifiable' must be justified by the facts and circumstances of that particular case." Noting that non-modifiable maintenance may extend beyond the receiving spouse's remarriage, we said there was nothing in the record to indicate a justification for ordering maintenance that might survive remarriage or other events affecting the propriety of the award. *Id.* We did not indicate, however, that the trial court was without jurisdiction to enter such an award there but, rather, that it was error to do so.

In *Valdez*, the trial court concluded that the husband's education as an engineer

---

12. Wife's motion to dismiss the motion to vacate alleged, *inter alia*, that there was no basis in law to support the claim that the court lacked jurisdiction to enter the non-modifiable maintenance or that the order was void. As indicated earlier that motion to dismiss was sustained on March 26, 2001.

was marital property, and awarded wife a percentage interest in husband's gross income. Husband did not appeal that award, but when wife attempted to enforce it, he sought to have that portion of the decree declared void because its entry was beyond the jurisdiction of the trial court. We said that jurisdiction involves the right, power and authority of a court to act, and "[t]he issuing court has jurisdiction if it has judicial authority over the subject matter, judicial authority over the parties, and judicial authority to render the judgment entered." *Id.* at 460–61. Significantly, we said that "[o]nce a court has jurisdiction over the subject matter and the parties in a given case, it is virtually impossible to distinguish acts in excess of jurisdiction from mere error or abuse of discretion." *Id.* We concluded that if the trial court had made a mistake, it was a mistake of law which did not deprive it of jurisdiction and, as a mistake of law, it should have been addressed on direct appeal. *Id.* at 461.

■ We are constrained by the above authorities to hold that if the earlier designation of the maintenance award as non-modifiable with no termination date was erroneous, it was because it was an error of law as opposed to being void because it was beyond the trial court's jurisdiction. We are unable to conclude that there are no circumstances under which such an order would be authorized, although we perceive that they would be exceedingly rare. Here, any mistake of law in the classification of the maintenance as non-modifiable should have been attacked by an appeal from the original dissolution decree. Since it was not so attacked, the non-modifiable aspect of the decree was res judicata. Husband's point based on such an award being void as beyond the trial court's jurisdiction because it was not authorized by statute is denied.

■ In the second of Husband's points addressing Wife's motion to dismiss, he argues that the non-modifiable maintenance award is void because it was not requested in Wife's petition. This contention is answered by *Mullins,* in which the trial court had entered a default judgment against the husband for monthly non-modifiable maintenance. *Id.* at 699. That case does not indicate that the decree included a termination date for the maintenance. Husband argued that the award was beyond the trial court's jurisdiction because the wife's petition, while it requested maintenance, did not request that it be non-modifiable. The appellate court denied that claim, saying that Section 452.335 provides for the awarding of maintenance and requires that the trial court designate whether it is modifiable or non-modifiable. *Id.* at 673. It said that wife requested maintenance and the trial court declared it to be non-modifiable, and husband had provided no authority for his contention that wife was required to state in her petition that she was seeking non-modifiable maintenance. *Id.* The same result applies in this case, and this point too is denied.

## III. THE TRIAL COURT'S DETERMINATION OF CHILD SUPPORT AMOUNT

In another point on appeal, Husband complains that the trial court erred in setting child support at $750 per month "because Missouri law requires that the court enter into the record the amounts which it determines should be used to calculate the child support obligation of the non-custodial parent." He notes that the trial court failed to attach its Form 14 to the judgment and did not enter in the record the actual numbers utilized in arriving at the amount of his child support obligation.

The trial court, in its judgment, rejected the Form 14s filed by Husband and Wife

and found that the presumed correct child support amount was $750 per month as calculated by the court in what it said was an attachment to the judgment. It also found that the amount of presumed correct child support, so calculated, was not rebutted as being unjust or inappropriate. As pointed out by Husband, however, there was no such attachment to the judgment that was entered on February 20, 2002.

The record reflects that a notice of appeal was filed on April 24, 2002. On December 4, 2002, the family court commissioner made the following docket entry:

> Court files the Court's Form 14 child support calculation worksheet with court file. And [sic] Court notes the worksheet filed herein is the worksheet referred to in the judgment entered in this cause. Copy of same to be forwarded to Missouri Court of Appeals, Southern District by the Circuit Clerk's office.

That copy (the "trial court's Form 14") was received by this court on December 6, 2002, and was also included as part of Wife's supplemental legal file filed with this court, without objection, on December 20, 2002, the same date Wife filed her brief here. Although Husband sought and obtained an extension of time within which to file a reply brief, no such brief was filed. Instead, Husband's attorney wrote the court saying that after reviewing Wife's brief and the case law, he did not feel that a reply brief would aid the court and notified the court that none would be filed. This was despite the fact that Wife's brief had recounted the late filing of the trial court's Form 14 calculations showing how the presumed correct child support that was ordered paid was calculated. She also pointed out that that worksheet was included in the supplemental legal file she filed with this court.

■ "The trial court can do its own Form 14 calculation[s] by either completing a Form 14 worksheet and making it a part of the record, which we recommend as the most efficient and surest way of preserving the record, or by articulating on the record how it calculated its Form 14 amount.... The lack of specific findings as to how the trial court calculated its Form 14 amount will not automatically trigger a reversal on appeal on that issue, provided the record clearly indicates how the trial court arrived at its Form 14 amount." *Woolridge v. Woolridge*, 915 S.W.2d 372, 382 (Mo.App. W.D.1996). Arguably, filing the completed worksheet · with the clerk suffices to make it a part of the trial record. *Glenn v. Francis*, 864 S.W.2d 947, 954 (Mo.App. S.D.1993).

■ In an attempt to demonstrate how the $750 amount could not be correct, Husband argued, without the benefit of the trial court's Form 14 worksheet, that he was entitled to credit for the $750 per month maintenance he had been ordered to pay. The trial court's Form 14 worksheet did not provide a credit to Husband for those payments. Wife notes, however, the trial court, in considering the motion to hold Husband in contempt, found that Husband had made none of the maintenance payments ordered, and, in fact, was $31,500 in arrears on that obligation. As we held in *In re Marriage of Ulmanis*, 23 S.W.3d 814, 822 (Mo.App.S.D.2000), when there is a delinquency in the payment of maintenance, the Form 14 calculations should not include the maintenance amount in the recipient's gross income, and that amount should not be deducted from the income of the party owing the maintenance. Accordingly, Husband was not entitled to have the $750 monthly maintenance payments deducted from his gross income for the purpose of calculating child support.

■ Although we do not recommend or condone the practice of filing the trial

court's Form 14 worksheet other than at the time of judgment, we are unable to conclude here that the delay in filing the worksheet, while lengthy, requires the relief sought by Husband. Under the circumstances, the trial court's Form 14 worksheet is a part of the record before us. In making its docket entry, the trial court stated that the form being filed with the clerk and being furnished to this court was the worksheet referred to in its judgment, a conclusion not contested by Husband. There apparently is no dispute about it appropriately being a part of the record on this appeal, there having been no objection to the filing of the supplemental legal file containing the worksheet. Husband filed no reply brief and, thus, did not dispute the propriety of considering the worksheet on this appeal, that it accurately calculated the presumed correct child support amount, or that the amounts utilized in the worksheet were supported by the evidence. As indicated above, Husband's contention that his gross income should be reduced by the maintenance payments he was ordered to make is not well taken. Husband, therefore, is not entitled to relief under this point. The point is denied.

## IV. CONTEMPT ORDER

In his last point on appeal, Husband posits error in the trial court's order that he be imprisoned for civil contempt for failing to pay child support and maintenance awarded in the dissolution decree. He argues that before a person can be incarcerated for civil contempt, there must first be a hearing on his ability to purge himself, and he must be found to have the present ability to make the payments required by the earlier judgment. Here, Husband says that the trial court entered an order that he be committed if he did not pay amounts without holding a hearing or determining his ability to make those payments.

In support of this point, Husband cites *State Family Services v. Bullock*, 904 S.W.2d 510, 513–14 (Mo.App. S.D. 1995) where, as here, the contemnor did not challenge the finding of contempt but, rather, the commitment order. In *Bullock*, this court outlined a two-step process in civil contempt proceedings. *Id.* at 513. The first is the adjudication of contempt which, in this case, is not contested. *Id.* The second stage is a determination of how the contemnor may purge himself or herself of the contempt. *Id.* Imprisonment for civil contempt is not justified unless the contemnor has the ability to purge himself of his contempt. *Id.* at 514. In that case, we found that the record did not establish that the contemnor had the ability to pay a $25,000 arrearage and we reversed the order of commitment. *Id.* See also *Lyons v. Sloop*, 40 S.W.3d 1, 12 (Mo.App. W.D.2001). In order to support an order of commitment, a trial court must make a finding that the contemnor has the present ability to purge himself of the contempt and thereby the key to the jailhouse door. *Bullock* at 514.

In the trial court's February 20, 2002 judgment, finding Husband guilty of contempt, it found that Husband: was aware of the judgment for maintenance, child support and health insurance premiums at or near the time it was entered; "had" the ability to comply with that judgment, but failed and refused to do so; his failure was willful, intentional, and contumacious; that although he made no payments on those obligations for the first eighteen months after the judgment was entered, his testimony demonstrated that he "had the ability to make some payments on those obligations;" and that during the "same period of time" [13] he lived in a residence with

13. This presumably refers to the first eighteen months after the dissolution judgment.

monthly rent of $950. These findings all related to past events. Such findings regarding past ability to pay do not equal a finding that the contemnor has the present ability to purge himself of the contempt. *Sample ex rel. Sample v. Saffaf,* 87 S.W.3d 903, 907 (Mo.App. E.D.2002); *Lyons* at 14; *In re Brown,* 12 S.W.3d 398, 401 (Mo.App. E.D.2000).

With reference to current conditions, the trial court found that Husband has approximately $960 net income over expenses each month and that he has an annual income of $44,000 and shares his monthly expenses with his current wife who earns $35,000 per year. The trial court ordered Husband jailed until he purged himself of the contempt by paying the arrearage of $62,785.78, plus all statutory interest, but ordered that the incarceration be stayed so long as he paid $30,000 by April 1, 2002, and the balance plus all interest by July 1, 2002. This judgment, however, did not contain a finding that Husband had the present ability to make the payments required in order to purge himself of the contempt.

The trial court held a hearing on April 8, 2002 on the status of Husband's compliance with the purge order and entered an amended warrant and order of commitment on April 26, 2002. In that order, the court referred to its earlier two-stage purge order, and said that the "[c]ourt further found that [Husband] was able to comply with said purge order." Although this apparently refers to the judgment holding him in contempt on February 20, 2002, such a finding is absent from that judgment. The April 26, 2002 order then recited the fact that a hearing was held on April 8, 2002 to review the status of the compliance with the purge order, and said that from the evidence presented, it found that Husband had made no payments on the arrearage since the date of the judgment of contempt, "nor has [Husband] pre-sented facts which would excuse his non-compliance or proven an inability to comply with said purge order." It then ordered Husband committed until he purged himself by paying the total of the arrearage plus interest. As to Husband's ability to pay the arrearage as required in the April 26, 2002 commitment order, it made no finding that he had the present ability to purge himself as ordered. It only found that he neither presented facts at the April 8, 2002 hearing which would excuse his non-compliance, nor did he prove an inability to comply with the purge order.

In *Anderson v. Anderson,* 91 S.W.3d 137, 140 (Mo.App. E.D.2002), a husband was found to be in contempt for failure to pay monthly maintenance. In the judgment finding him in contempt, the court noted that it was undisputed that his failure to pay maintenance was willful and contemptuous, and that his excuse of inability to work because of diabetes was "not sufficiently credible to support a finding he cannot pay his maintenance obligation because he is too sick to work." In its order of commitment and warrant, the court said that husband "has failed to purge himself of contempt and has failed to show why he should not be confined ... until he does so." On appeal, the court found that the trial court's commitment order was insufficient because it did not make the required finding that husband had the current ability to purge his contempt. *Id.* at 141.

*Lyons* was also a case in which the trial court, in finding a father in contempt for his failure to pay child support, made findings concerning his ability to pay that were couched in terms of past ability. Likewise, in its warrant for commitment, it found that the father had not presented sufficient evidence to substantiate that he was unable to comply. The *Lyons'* court found that the findings were insufficient to support the order of commitment. *Id.* at 14.

We are constrained to hold in the instant case, therefore, that the commitment order must be reversed and the case remanded with directions that the trial court make findings regarding Husband's present ability to pay the arrearage plus statutory interest or otherwise purge himself of his contempt. As we said in *Bullock*, "[I]f [Husband] is found capable of purging himself of contempt by paying the total arrearage within a reasonable time, the trial court may re-enter its original order. If not, the trial court can consider other methods, within [Husband's] means, by which he may purge himself of the adjudged civil contempt. If other methods are required, imprisonment nonetheless remains a possible method of enforcing payment." *Id.* at 514.

The portion of the judgment dismissing Husband's motion to vacate the portions of the dissolution decree requiring that he carry life insurance naming the child or Wife as beneficiary, and that he carry disability insurance with the child as irrevocable beneficiary is reversed. The commitment ordering him imprisoned for contempt is reversed. The case is remanded to the trial court for further proceedings consistent with this opinion relating to Husband's motion to vacate the provisions in the dissolution decree relating to life insurance and disability insurance; consideration of Husband's present ability to purge himself of contempt; and for the entry of a new warrant and commitment consistent with those findings. Otherwise, the judgments are affirmed.

MONTGOMERY, P.J., and BARNEY, J., concur.